Mark Sartin appeals from a summary judgment entered in favor of Mike Madden doing business as Inside Stone[1] in an action brought pursuant to the Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975 ("the Act"). We reverse and remand.
The record reflects that Inside Stone, a business located in Spruce Pine, entered into contractual agreements with various regional mobile-home manufacturers for the performance of stone masonry work in the construction of new mobile homes, including the installation of stone fireplaces. Sartin was one of several workers engaged by Inside Stone to help install rock in the fireplaces.
On September 10, 2004, approximately two years after Sartin had begun performing services for Inside Stone, Sartin filed a complaint in the Franklin Circuit Court alleging that he had been injured in the line and scope of his employment on November 24, 2003, and on June 29, 2004. In that complaint, Sartin averred that on November 24, 2003, he was grouting a fire-place hearth when he slipped and fell, injuring his back and kidney. He also averred that on June 29, 2004, he was again cleaning a hearth when he slipped and fell injuring his leg. Sartin claimed that as a result of those injuries, he was unable to bend down, had little use of his right leg, was unable to lift heavy objects, and suffered leg pain that caused insomnia. Inside Stone filed an answer generally *Page 1026 
denying the material allegations of the complaint and specifically averring that Sartin was not its "employee" under the Act. Sartin later filed an amended complaint to add additional counts alleging retaliatory discharge and intentional infliction of emotional distress.
In April 2005, Inside Stone filed a motion for a summary judgment with supporting evidentiary materials. Sartin filed a response in opposition to Inside Stone's motion, attaching his own affidavit, the affidavits of two men who had assisted Sartin in laying the fireplace rock, and excerpts from the transcript of Sartin's deposition. Inside Stone subsequently filed a motion to strike the affidavits submitted by Sartin, alleging that those affidavits failed to comply with Rule 56(e), Ala. R. Civ. P., in various respects. On September 13, 2006, after holding a hearing, the trial court denied Inside Stone's motion to strike but entered a summary judgment in favor of Inside Stone. That judgment stated, in pertinent part, as follows:
 "The Court having considered all the relevant evidence submitted finds that the most credible indication that [Sartin] was an independent contractor is the method in which he chose to file his federal and state income tax return. Inside Stone did not withhold any federal income tax and issued a [form] 1099 to Mr. Sartin each year that he performed services for Inside Stone. That form 1099 reflects that the compensation paid for the year was for [a] `non-employee.' Mr. Sartin did not contest his status of a non-employee and further chose to file his income tax [return] reflecting his income to be business income. Of course, that business income is subject to self-employment tax which is appropriately reflected in [Sartin's] expenses.
 "Additionally, it is the finding of the Court that Mr. Sartin controlled the hours of work and the method in which he performed the job. Paul Scott inspected the product to assure compliance with the standard expected of Inside Stone. Therefore, it is the finding of the Court that the motion for [a] Summary Judgment filed on behalf of [Inside Stone] is due to be granted."
Sartin appeals.[2] He contends that the trial court erred in entering a summary judgment in favor of Inside Stone on his workers' compensation claim, because he says, he submitted substantial evidence to the trial court establishing that a genuine issue of material fact remained as to whether his relationship with Inside Stone was that of an employee or an independent contractor.
In reviewing the trial court's judgment, we apply the standard of review applicable to summary judgments.
 "[An appellate court] reviews a summary judgment de novo. Turner v. Westhampton Court, L.L.C., 903 So.2d 82, 87 (Ala. 2004). We seek to determine whether the movant has made a prima facie showing that there exists no genuine issue of material fact and has demonstrated that the movant is entitled to a judgment as a matter of law. Turner, supra. In reviewing a summary judgment, [an appellate court] review[s] the evidence in the light most favorable to the nonmovant. Turner, supra. Once the movant makes a prima facie showing that he is entitled to a summary judgment, *Page 1027 
the burden shifts to the nonmovant to produce `substantial evidence' creating a genuine issue of material fact. Ala. Code 1975, § 12-21-12; Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Fla., 547 So.2d 870, 871
(Ala. 1989)."
Muller v. Seeds, 919 So.2d 1174, 1176-77 (Ala. 2005).
In determining "whether [an individual] is an independent contractor or whether an employer-employee relationship exists, the courts look to the reserved right of control rather than the actual exercise of the control."Turnipseed v. McCafferty, 521 So.2d 31, 32
(Ala.Civ.App. 1987) (emphasis added). If the right of control extends no farther than directing what is to be ultimately accomplished, an employer-employee relationship is not established; however, "if an individual [or an entity] retains the right to direct the manner in which the task is to be done or if thatindividual [or entity] does in fact dictate the manner ofoperation, than an employer-employee relationship is established." Turnipseed, 521 So.2d at 33 (emphasis added). Factors to consider in determining whether an individual or an entity has retained the right of control include: (1) direct evidence demonstrating a right or an exercise of control, (2) the method of payment for services, (3) whether equipment is furnished, and (4) whether the other has the right to terminate the employment. Id.; White v. Henshaw, 363 So.2d 986,988 (Ala.Civ.App. 1978). "[T]he retention of control necessary to establish employee status is determined on a case-by-case basis." Luallen v. Noojin, 545 So.2d 775, 776
(Ala.Civ.App. 1989). "No one fact by itself can create an employer-employee relationship." Id.
Inside Stone supported its motion for a summary judgment with affidavits from Mike Madden, affidavits from four other persons who had been engaged by Inside Stone to install fireplaces, and the affidavit of a person who had been retained by Inside Stone to ensure that the completed fireplaces met the specifications of the mobile-home manufacturers.
Mike Madden testified by affidavit that Inside Stone utilizes the services of independent contractors to perform the installation of stone fireplaces in new mobile homes. He affirmed that the contractors are compensated on a per-fireplace basis and denied that they were on Inside Stone's employee payroll. With respect to Sartin, Madden averred that Sartin had no set work schedule, that he could accept or decline work offers from Inside Stone, and that Sartin had hired his own employees to assist him in fulfilling his installation commitments to Inside Stone. Although Madden denied that anyone from Inside Stone had instructed Sartin on the manner in which he was to perform his job installing the fireplaces, Madden did acknowledge that Inside Stone checked Sartin's final work product to ensure that it complied with the mobile-home manufacturers' specifications.
Mike Riddle, Darrel Sumeral, Tracy Malone, and Kevin Vernon (collectively, "the contractors") testified that they had been hired as independent contractors by Inside Stone to perform stone work on fireplaces in mobile homes at various manufacturing facilities. The contractors averred that they were compensated only on a per-fireplace basis and that no moneys were withheld from their paychecks for the payment of taxes or other benefits. The contractors *Page 1028 
further affirmed that they were allowed to accept or decline requests by Inside Stone to perform fireplace installations and that they were free to work for other business entities in addition to their work with Inside Stone. The contractors also affirmed that they commonly hired their own employees to assist them in fulfilling their contractual obligations to Inside Stone. Although the contractors denied that Inside Stone supervised their daily work activities, they acknowledged that Inside Stone inspected their final work product to ensure that it was installed in compliance with the manufacturers' contract specifications.
Paul Scott affirmed that he was an "independent contractor" engaged by Inside Stone to coordinate the "performance" of Inside Stone's contractual agreements with the mobile-home manufacturers. Although Scott affirmed that Sartin had controlled the details of his own work, Scott admitted that he had traveled to mobile-home manufacturing sites from "time to time" to check contractors' work to ensure that the fireplaces were being installed in accordance with the specifications of the manufacturing facilities. With respect to Sartin, Scott denied that he or Inside Stone had controlled the details of Sartin's work. He stated that Sartin was free to hire his own helpers without permission from or the consent of Inside Stone and asserted that Sartin had paid the helpers himself. Scott further testified that Sartin had no scheduled work hours, that he was free to come and go from the work site as he pleased, that he was paid on a per-fireplace basis, and that he turned in no paperwork to Inside Stone.
Inside Stone also submitted various excerpts from the transcript of Sartin's deposition in support of its motion for a summary judgment. Sartin testified in those excerpts that he was paid based on the number of fireplaces that he completed weekly, that he had no set work schedule, and that he had no specific arrival time for work and could leave whenever his work was "done" for the day. Sartin also stated in his deposition that Paul Scott would periodically come to job sites to check Sartin's work to make sure that it conformed with the mobile-home manufacturers' specifications. Sartin also admitted that he had characterized his relationship with Inside Stone as that of a nonemployee on his 2003 and 2004 federal and state income-tax returns and that he had referred on those returns to the moneys that he had received from Inside Stone as "business income." In addition, Sartin stated that he had filed for and received federal tax deductions for business-related expenses arising solely from the services that he had provided for Inside Stone for 2003 and 2004.
In his affidavit filed in response to Inside Stone's summary-judgment motion, Sartin averred that he had never been an independent contractor for Inside Stone, that Inside Stone had provided him with materials and equipment used for laying the stone, and that he had been "supervised" by Paul Scott, who, Sartin testified, had on "many occasions" directed him how to lay the stone around the fireplaces. Sartin's response to the summary-judgment motion included excerpts from his deposition. According to those excerpts, Sartin testified that Scott would "tell us how to lay the rock on a fireplace" and that Scott told him "how to do the wire [and] how to cut it." In addition, Sartin also testified that he had supplied a few of the tools needed to accomplish the particular jobs and that Inside Stone had supplied all of the raw materials and a majority of the tools used to cut and lay the stone. Although Sartin admitted that he had hired Terry Perkins and James Valentine to help Sartin lay the stone, he stated that *Page 1029 
he only did so after having received permission from Scott to hire the men and that those men had been paid directly by Inside Stone and not by Sartin.
In addition, Sartin also filed the affidavits of Brandon Motes and Terry Perkins, two men who had assisted Sartin in laying the stone fireplaces for Inside Stone. Motes affirmed that in the summer of 2004 Scott had told Motes to leave the job site because he was not an "employee" of Inside Stone. Perkins testified that Scott would "chew" workers out if they were not on the job by 8:00 a.m., that if Mike Madden failed to bring "us tools or materials, we charged them in [Madden's] name at the lumberyard in Double Springs," and that he had been discharged by Scott because "work was slow."
Inside Stone argues that Sartin's evidentiary materials should have been stricken by the trial court because they were based on inadmissable speculation, conjecture, opinions, conclusions, and hearsay, and that Sartin's affidavit improperly contradicted his own deposition testimony. "Under Rule 56(e), an opposing affidavit must be made on personal knowledge, must set forth facts that would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated." Black v.Reynolds, 528 So.2d 848, 849 (Ala. 1988). Although Sartin's supporting affidavits do not state verbatim that they are "based on personal knowledge," the content of those affidavits demonstrates that the information recited in the affidavits is based on the affiants' personal knowledge as to their recollection of conversations that transpired between Scott, on the one hand, and Sartin, Perkins, and Motes, on the other. Those affidavits present relevant, material, and admissible evidence supporting Sartin's claim that Scott was acting on behalf of Inside Stone when he refused to allow Motes to remain on the job site and when he discharged Perkins because of a purported "slow down" in work.
Although Inside Stone alleges that Perkins's affidavit contains inadmissible hearsay in that Perkins testified that he had "overheard" Scott telling Sartin that James Valentine was not supposed to be on the job site because Valentine was not an "employee" of Inside Stone, that statement is admissible because (a) it was made by an agent of Inside Stone concerning a matter within the scope of his agency, see Rule 801(d)(2)(D), Ala. R. Evid., and (b) it tends to prove that the statement was in fact made. "`A statement made out of court is not hearsay if it is given in evidence for the purpose merely of proving that the statement was made, provided that purpose be otherwise relevant in the case at trial.'" YamahaMotor Co., v. Thornton, 579 So.2d 619, 625 (Ala. 1991) (quoting Bryant v. Moss, 295 Ala. 339, 342,329 So.2d 538, 541 (1976)). In this case, the statement is relative to the issue as to whether Scott, on behalf of Inside Stone, exercised control over Sartin and the manner in which he performed his job, i.e., Sartin's hiring of others to assist him in installing the fireplaces. The statement is also relative to support Sartin's contentions that his relationship with Inside Stone and the relationship of similar workers who installed fireplaces for Inside Stone, was that of an employee rather than an independent contractor.
Inside Stone also contends that Sartin's affidavit improperly contradicted his deposition testimony when Sartin affirmed that "I was told when to be at work."
 "[Our Supreme] Court has held that `a party is not allowed to directly contradict prior sworn testimony to avoid the *Page 1030 
entry of a summary judgment.' Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313, 317
(Ala. 1992), citing Doe v. Swift, 570 So.2d 1209, 1214 (Ala. 1990). `"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."' Id., quoting Robinson v. Hank Roberts, Inc., 514 So.2d 958, 961 (Ala. 1987). However, when a party submits a subsequent affidavit merely to clarify his or her answers to ambiguous questions asked by counsel during a deposition or other prior sworn proceeding or to supply information not necessarily sought by questions asked at the deposition or other prior sworn proceeding, the trial court should consider the subsequent affidavit. See, e.g. Rickard v. Shoals Distrib., Inc., 645 So.2d 1378, 1382-83 (Ala. 1994); and Tittle v. Alabama Power Co., 570 So.2d 601, 606-07
(Ala. 1990)."
Wilson v. Teng, 786 So.2d 485, 497 (Ala. 2000).
In this case, the record reflects that on direct examination by Inside Stone's counsel, Sartin testified at his deposition that he had no set work schedule and was not told when to arrive at work. However, when Sartin was later asked to clarify his earlier response, he testified as follows:
 "Q. Did anybody ever tell you when you were supposed to be at work or how long you were supposed to be at work?
 "A. No, sir. I was told at least to be there by 8:00."
Sartin subsequently affirmed in his affidavit that he "was told when to be at work" and supported that statement with excerpts from the transcript of his deposition. Because Sartin's affidavit serves to confirm certain aspects of his previous testimony, we conclude that the trial court did not err in not striking Sartin's affidavit.
Viewing the evidence in the light most favorable to the non-movant, as we must, we conclude that although much of the evidence would support a finding that Sartin and Inside Stone were engaged in an independent-contractor arrangement, there is substantial evidence that creates a genuine issue of material fact as to whether the relationship was an independent-contractor relationship or an employer-employee relationship. Although Inside Stone deducted no taxes from Sartin's pay-checks and provided no fringe benefits, which are factors indicating an independent-contractor status, Sartin submitted evidence indicating that Paul Scott, who had been hired by Inside Stone to oversee the fireplace installations, exercised control over the manner in which Sartin did his daily job and also exercised the power to discharge others who had been hired by Sartin. Sartin also submitted evidence indicating that Inside Stone provided many of the tools that Sartin used to accomplish his job. Such evidence touches and concerns three of the four principal factors to be considered in determining the existence of an employer-employee relationship.
Accordingly, we reverse the summary judgment in favor of Inside Stone, and we remand the case for trial. Although we conclude that a genuine issue of material fact precludes a summary judgment as to Sartin's claim for benefits under the Act, our opinion should not be misread to compel any particular conclusion regarding whether an independent-contractor relationship or an employer-employee relationship existed between Sartin and Inside Stone. Rather, we merely direct the trier of fact to weigh the evidence and reach its *Page 1031 
own conclusion based upon all the evidence.
REVERSED AND REMANDED.
CRAWLEY, P.J., and THOMPSON, J., concur.
MURDOCK and BRYAN, JJ., concur in the result, without writing.
[1] The complaint identifies the defendants as "Mike Madden and Craig Madden d/b/a Inside Stone." However, the answer and an affidavit filed in the trial court indicate that Inside Stone is a sole proprietorship owned by Mike Madden. Based on the record, it appears that Craig Madden did not participate in the proceedings below, and he has not filed a brief on appeal.
[2] Although the summary-judgment motion filed by Inside Stone was addressed only to the workers' compensation claim asserted by Sartin, the trial court's judgment indicates an intent to rule in favor of Inside Stone on all claims. Because Sartin does not contend on appeal that his other claims are viable, we do not reach the issue as to whether the summary judgment was proper as to those claims.