[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 429 
Jake Atchison, Jessica Atchison, and Jonathan Atchison ("the dependents") appeal from the Chilton Circuit Court's November 30, 2006, summary judgment in favor of Boone Newspapers, Inc., and Clanton Newspapers, Inc. (hereinafter referred to collectively as "the companies"), [1] in the dependents' action seeking workers' compensation benefits. In its summary-judgment order, the trial court determined that Linda Atchison, the dependents' mother ("Atchison"), was working as an independent contractor of Clanton Newspapers, Inc., and not as an employee of the companies at the time she was killed in a motor-vehicle accident. We affirm.
 Standard of Review
We review a summary judgment de novo using the same standard employed by the trial court. McGriff v. Owen,791 So.2d 961 (Ala.Civ.App. 2000).
 "Summary judgment is proper only where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Southern Guar. Ins. Co. v. First Ala. Bank, 540 So.2d 732 (Ala. 1989). Where, however, the nonmovant produces substantial evidence to support its complaint, summary judgment cannot be granted. Southern Guar. Ins. Co."
Outlaw v. R.E. Garrison Trucking, Inc., 612 So.2d 494,496 (Ala.Civ.App. 1992). "Substantial evidence" is "`evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus.,Inc., 680 So.2d 262, 268 (Ala. 1996) (quoting West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989)).
 Facts and Procedural History
It is undisputed that on November 6, 2004, Atchison was involved in a fatal motor-vehicle accident while on a public roadway delivering The Clanton Advertiser, a newspaper published by Clanton Newspapers, Inc. On December 9, 2005, the dependents filed a civil action in the Chilton Circuit Court, seeking workers' compensation death benefits from the companies on account of Atchison's death. In that complaint, the dependents alleged that Atchison had been an employee of the companies and that her death arose out of and in the course of her employment. The companies filed an answer denying all the material allegations of the complaint. In addition, the companies filed responses to interrogatories, denying that Atchison had been an employee but asserting that she had been an independent contractor. *Page 430 
After a period of discovery, the companies filed a motion for a summary judgment on October 27, 2006. The companies attached to that motion two contracts signed by Atchison on August 10, 2004. The first contract, entitled "Independent Contractor Distribution Agreement Home Subscriber Delivery," provided that Atchison would be considered a self-employed independent contractor who contracted to deliver The Clanton Advertiser. The contract stated, in pertinent part:
 "Both [Atchison] and the Clanton Advertiser fully and freely intend to create an independent contractor relationship under this contract. [Atchison], under this contract, has the right to control the manner and the means of delivery of newspapers to home subscribers. [Atchison] has the right to determine the equipment and supplies needed to perform delivery services under this contract, and [Atchison] shall bear all expenses associated with the purchase, operation and maintenance of equipment and supplies. [Atchison] has the right to hire employees of [her] choosing and to contract with others to fulfill [Atchison's] obligations under this contract. [Atchison] shall have the right to engage in any other business, including the delivery of other newspapers."
The contract further provided that Atchison would deliver The Clanton Advertiser in a designated area. Under the terms of the first contract, Atchison would purchase the newspapers at 22 cents apiece and resell them to subscribers in her designated area. Atchison agreed to take delivery of the newspapers at the office of The Clanton Advertiser in Clanton and to deliver the newspapers in a safe, complete, and dry condition no later than 6:30 a.m. The Clanton Advertiser agreed to field any complaints from subscribers, but Atchison was afforded the discretion to determine the manner in which the complaint was to be resolved so long as it was resolved on the day the complaint was received. Atchison agreed to use her best efforts to increase the number of subscribers and to keep delivery complaints below one per every 1,000 newspapers delivered. Either party could terminate the contract for any reason by giving the other party 30 days' written notice or could terminate the contract immediately for cause.
The second contract, entitled "Independent Contractor Distribution Agreement TMC Delivery," contained basically the same language as the first contract; however, it concerned the delivery of "The Clanton Advertiser Extra," which Atchison agreed to purchase for 8 cents per copy and to deliver "within a reasonable time."
The companies also attached to their summary-judgment motion a 1099-Misc tax form indicating that Clanton Newspapers, Inc., had paid Atchison $2,027.11 in "nonemployee compensation" for the year 2004 and had not deducted any payroll taxes for Atchison. The companies also attached several checks made payable to Atchison in 2004 and 2005 from a Boone Newspapers, Inc., account.
The companies also submitted an affidavit from Michael R. Kelly, the president and publisher of Clanton Newspapers, Inc. In his affidavit, Kelly deposed that Atchison was an independent contractor of Clanton Newspapers, Inc., and that she had delivered The Clanton Advertiser and The Clanton Advertiser Extra. The affidavit averred that Atchison had no contractual relationship with Boone Newspapers, Inc. Kelly stated in his affidavit that Atchison had received the newspapers in order to deliver them by 6:30 a.m. and that Clanton Newspapers, Inc., did not control the methods or means by which she had delivered the newspapers or the manner in which she had performed her duties under *Page 431 
the contracts. Kelly stated that Clanton Newspapers, Inc., had paid Atchison the difference between the wholesale price of the newspapers and the price it charged its subscribers, which equaled 10 cents per copy of The Clanton Advertiser and 8 cents per copy of The Clanton Advertiser Extra that she delivered. Kelly also stated that Atchison had received a hardship allowance in the amount of $250 in August 2004 and a hardship allowance in the amount of $300 in September and October 2004, based on the judgment of Clanton Newspapers, Inc., regarding "the difficulty of delivering the total newspaper route."
The dependents filed a brief in response to the motion for a summary judgment, but they did not file any opposing statement of facts or submit any evidentiary materials to controvert the evidence submitted by the companies.
On November 30, 2006, the trial court granted the companies' motion for a summary judgment. The dependents timely appealed on January 2, 2007. This court remanded the case for the entry of written findings of facts and conclusions of law on March 16, 2007. The trial court complied with the remand order on March 27, 2007.
 Analysis
In Birmingham Post Co. v. Sturgeon, 227 Ala. 162,149 So. 74 (1933), the supreme court held that "`[t]he compensation law does not apply where the injured person is an independent contractor, and the relation of employer and employee does not exist.'" 227 Ala. at 165, 149 So. at 76 (quoting 1 Honnoldon Workmen's Compensation § 66). The Sturgeon
court further held that the test for distinguishing an employee from an independent contractor for workers' compensation purposes is whether the purported employer reserved the right to control the manner in which the worker performed the duties of the work. 227 Ala. at 166, 149 So. at 77. Applying those general principles, the court held that a newspaper-delivery person who was required to report at an appointed time each day to pick up newspapers, to report to his designated territory at a certain time to sell those newspapers, and to sell the newspapers for a minimum price, but who could use any route within his territory, could use any method to sell the newspapers without the direct supervision of any manager, and received his pay based on the difference in the wholesale price and the retail price of the newspapers, was an independent contractor.
Since Sturgeon, the supreme court has not passed again on the nature of the employment relationship between a newspaper-delivery person and a publisher for the purposes of workers' compensation coverage. However, the basic principles first espoused in Sturgeon have only been reinforced in subsequent caselaw. As the law stands now,
 "`[f]or one to be an employee, the other party must retain the right to direct the manner in which the business shall be done, as well as the result to be accomplished or, in other words, not only what shall be done, but how it shall be done.'"
White v. Henshaw, 363 So.2d 986, 988
(Ala.Civ.App. 1978) (quoting Weeks v. C.L. Dickert LumberCo., 270 Ala. 713, 714, 121 So.2d 894, 895 (1960)). In determining "whether [an individual] is an independent contractor or whether an employer-employee relationship exists, the court looks to the reserved right of control rather than the actual exercise of control." Turnipseed v. McCafferty,521 So.2d 31, 32 (Ala.Civ.App. 1987). If the right of control extends no further than directing what is to be ultimately accomplished, an employer-employee relationship is not established; *Page 432 
however, "if an individual retains the right to direct the manner in which the task is to be done or if that individual does in fact dictate the manner of operation, then an employer-employee relationship is established." Id.
at 33. The factors to be considered in determining whether an individual or an entity has retained the right of control include: (1) direct evidence demonstrating a right or an exercise of control; (2) the method of payment for services; (3) whether equipment is furnished; and (4) whether the other party has the right to terminate the employment. See Ex parteCurry, 607 So.2d 230 (Ala. 1992).
In this case, the only evidence pertaining to the relationship between the parties consisted of the two contracts submitted by the companies, Kelly's affidavit, and the tax forms and checks showing the method of payment for Atchison's work. That evidence establishes that the companies did not reserve the right to control the means and agencies by which Atchison delivered the newspapers or resolved delivery complaints; that the companies did not directly supervise or otherwise control the manner in which Atchison accomplished her duties under the delivery contracts; that the companies paid Atchison based on the number of papers delivered rather than on the number of hours worked or the level of Atchison's performance; that the companies did not provide any of Atchison's equipment; and that the contracts could be terminated only with 30 days' notice or immediately for cause. The contracts further allowed Atchison to perform work for other persons or entities and to select her own helpers. The tax forms show that Clanton Newspapers, Inc., treated Atchison as a nonemployee. All of these factors indicate that Atchison was an independent contractor.
The dependents are correct that the designation of Atchison as an independent contractor in the contracts is not necessarily controlling. See Domino's Pizza, Inc. v. Casey,611 So.2d 377 (Ala.Civ.App. 1992). However, that designation is reinforced by the other terms of the contracts and the manner in which Atchison was paid. The dependents offered absolutely no evidence to contradict the terms of the contracts to show that, in fact, Atchison was subject to the control of the companies. The objective evidence supports the designation set out in the contracts and establishes that Atchison was, in fact, an independent contractor.
The dependents argue that the companies reserved the right to control Atchison's work by designating the time and place she picked up the newspapers; by defining her delivery territory; by requiring her to use her best efforts to increase the circulation of the newspapers; by reserving the right to terminate the contract for cause, i.e., in the event the subscriptions in Atchison's territory decreased by 10%, in the event Atchison received too many complaints, or in the event Atchison failed to deliver the newspapers; by requiring Atchison to carry automobile liability insurance and to indemnify them for any claims for damage; and by requiring Atchison to deliver the newspapers by 6:30 a.m. in a safe, complete, and dry condition. As established in Sturgeon, supra, those requirements are directed at assuring the end result, not the method by which the employee achieved that result. If the right of control extends no further than to the end result, and not to the manner in which the work goal is accomplished, then no employer-employee relationship is established. See White v.Henshaw, supra. Additionally, the fact that the contracts required Atchison to carry her own insurance only supports the inference that she was considered an independent contractor.See generally Miles v. Tennessee River *Page 433 Pulp Paper Co., 519 So.2d 562 (Ala.Civ.App. 1987).
The dependents also argue that the summary judgment is improper based on Brown v. Commercial Dispatch Publishing Co.,504 So.2d 245 (Ala. 1987), and Jenkins v. Gadsden TimesPublishing Corp., 521 So.2d 957 (Ala. 1988). InBrown, the supreme court reversed a summary judgment entered in favor of a newspaper publisher in a civil action filed by a passenger injured when the driver, who was delivering newspapers pursuant to a contract with the publisher, lost control of his automobile. The trial court had concluded that the driver was an independent contractor. The facts inBrown are similar to the facts in the present case in that the delivery person entered into a contract with the publisher that dictated the delivery territory and some of the terms of delivery; however, Brown differs significantly from the present case in that the publisher offered to procure the delivery carrier's life and accident insurance and required the carrier to listen to a cassette tape detailing the method by which the newspapers were to be delivered to specific subscribers. The publisher supervised its carriers constantly and strictly and also helped defray some of the automobile expenses incurred by its carriers. Those additional factors convinced the court that there was a scintilla of evidence[2]
that the publishers not only controlled the end result, but also the method by which its carriers delivered the newspapers.
In Jenkins, the mother of an injured minor filed a civil action against a newspaper publisher based on the doctrine of respondeat superior. The mother alleged that a carrier who had injured her son while operating an automobile in the course of delivering newspapers for the publisher was an employee of the publisher. The trial court entered a summary judgment for the publisher based on its conclusion that the evidence established that the carrier was an independent contractor. However, much of the evidence established that the publisher had controlled the methods and means by which the carrier delivered the newspapers, including evidence indicating that the publisher had designated the exact route the carrier used to deliver newspapers, that the carrier had never deviated from that route, that the carrier had taken direction from an employee of the publisher via an audiocassette, that the publisher had directed the carrier on how to resolve complaints, and that the publisher had procured insurance on the carrier and had charged her for the premiums. The court held that that evidence created a genuine issue of material fact as to whether the carrier was acting as an employee of the publisher at the time of the accident with the minor child.
Putting aside the fact that Brown and Jenkins
are not workers' compensation cases and were not decided based on the substantial-evidence rule, [3] we still find that they do not dictate a reversal of the trial court's summary judgment. Whether a worker is an employee or an independent contractor depends on the facts of each particular case. Amerine v.James Tyson Co., 578 So.2d 1327 (Ala.Civ.App. 1990). The facts of this particular case differ materially from the facts in Brown and Jenkins. The dependents presented no evidence establishing that the companies actually supervised Atchison and directed the specific method and manner of her work as set out in Brown and Jenkins. *Page 434 
The dependents also presented no evidence indicating that the companies treated Atchison as an employee by offering her fringe benefits ordinarily reserved for employees — such as insurance — as was the case in Brown andJenkins. The differences between the facts of the present case and the facts of Brown andJenkins render the holdings in those cases inoperative.
The dependents have not presented any ground for reversing the trial court's summary judgment in favor of the companies. Therefore, we affirm the summary judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
[1] The dependents' original complaint named Boone Newspapers, Inc., d/b/a The Clanton Advertiser as the only defendant. Based on information provided by the companies in response to an interrogatory, the dependents amended their complaint "to substitute Boone Newspapers, Inc.: Clanton Newspapers, Inc. as the correct legal name of the Defendant." The companies' summary-judgment motion, which the trial court granted, was filed by Boone Newspapers, Inc., and
Clanton Newspapers, Inc.
[2] Brown and Jenkins were decided under the scintilla-of-evidence rule, which was abolished in favor of the substantial-evidence rule.
[3] See note 2.