On Application for Rehearing

THOMPSON, Presiding Judge.
The opinion of January 28, 2011, is withdrawn, and the following is substituted therefor.
*1205 Susan Schein Chrysler Dodge, Inc. (“Schein”), appeals from a judgment holding that Selby K. Rushing, Jr., was an employee of Sehein’s and awarding workers’ compensation benefits to him for injuries he received in a motor-vehicle accident. When the accident occurred, Rushing was transporting a pickup truck from an automobile dealership in Jacksonville, Florida, to Schein’s automobile dealership in Pelham.
By agreement of the parties, Rushing’s claim for workers’ compensation benefits was bifurcated. The first issue determined by the trial court was whether Rushing was an employee of Schein’s or whether he was acting as an independent contractor when he was injured. On October 1, 2009, after a hearing during which ore tenus evidence was presented, the trial court entered an order holding that Rushing was an employee of Schein’s and, therefore, that he was entitled to appropriate benefits pursuant to the Workers’ Compensation Act, § 25-5-1 et seq., Ala. Code 1975 (“the Act”). Based upon the parties’ subsequent submissions to the trial court regarding the nature and extent of the injuries Rushing suffered in the accident and his resulting disabilities, the trial court entered a final judgment on July 28, 2010, holding that Rushing was permanently and totally disabled and awarding benefits accordingly.[1]
The only issue Schein raises on appeal is whether the trial court improperly determined that Rushing was Schein’s employee, as that term is contemplated by the Act. Therefore, we will set forth the facts relevant to that issue. The record indicates the following. Rushing was one of numerous retirees who supplemented their retirement incomes by delivering or transferring vehicles to and from Birmingham-area automobile dealerships as the need arose. Todd Moore, the former inventory-control manager at Schein, testified that if the dealership did not have the specific vehicle a customer wanted, it would attempt to locate that vehicle at another dealership. When the vehicle was located, the dealership would use drivers to retrieve the vehicle from the other dealership, a process known as a dealer transfer. Two drivers would ride in one vehicle to the other dealership, and then one would drive the vehicle the customer had ordered while the other would return in the same vehicle used to make the trip.
Moore testified that, years earlier, he had had trouble finding drivers to make the dealer transfers. A colleague at another dealership gave him the name of Fred McGriff, who kept a list of seven or eight people — primarily retirees in their 60s and 70s — who would make dealer transfers for a flat fee. McGriff, who had stopped driving for the dealerships because of his advanced age, was not an employee of any of the dealerships. Moore explained that when a dealership needed someone to transfer a vehicle, it would contact McGriff and tell him it needed a “pick up” from a certain location. McGriff would in turn contact someone on the list of drivers and ask whether that person would be able to make the dealer transfer. The person who was contacted *1206 had the option of turning down any request. Moore testified that he never made the initial contact with the drivers. Generally, once the dealer-transfer vehicle had been delivered to the dealership, the driver would be paid by a check from the dealership. Rushing and other drivers testified that taxes were not taken from the payments. If a payment to a driver for a single delivery was more than $600, the dealership would provide the driver with a form 1099 for income-tax purposes.
Rushing testified that he had made dealer transfers for Schein and two other dealerships in the area. He said he could not recall exactly when he had begun making dealer transfers, but, at the time of the accident, he had been making the transfers for at least several years. Rushing’s tax records, which were submitted into evidence, indicate that he never earned more than $2,800 in a year from the dealer transfers. On his tax returns, Rushing indicated that he was retired and that he earned no wages and listed as other income the money he earned driving dealer transfers.
Regarding the dealer transfer that resulted in the accident made the basis of this action, Rushing testified that he received a telephone call from either McGriff or Moore, he was unsure which, and that he was asked whether he could make the trip to Jacksonville, Florida, to obtain a pickup truck for Schein. Rushing agreed to the trip and went to one of Schein’s dealerships to meet with Moore. Moore provided Rushing with the make, model, and vehicle-identification number of the pickup truck Rushing was to bring back to Schein’s dealership, as well as insurance documents, documents that would enable him to transfer title, a dealer tag to place on the pickup truck, and directions to the Jacksonville dealership. On some occasions, Rushing said, he was given a check to give to the dealership from which he was retrieving a vehicle; other times, the vehicle already had been paid for by the time he arrived at the dealership to pick up the vehicle. He said he could not recall which method had been used on the trip at issue. Rushing testified that Moore also told him to go to Schein’s Chevrolet dealership, where Rushing was provided with the “chase car,” that is, the car Rushing would use to travel to Jacksonville.
Rushing said that, generally, dealer-transfer drivers were instructed to inspect the vehicles they were sent to retrieve. On the occasions he was driving a transfer vehicle for Schein, Rushing said, if a vehicle was damaged or was in poor repair, he would call Moore and describe the problem with the vehicle. The decision whether to bring the damaged vehicle back to Schein rested with Moore, Rushing said. He testified that, although Moore had provided him with directions to the Jacksonville dealership, if he knew a shorter or better route, he was free to take it. Also, other than obeying traffic regulations and speed limits, Rushing said, Schein did not have any rules or guidelines that dealer-transfer drivers had to follow. For example, drivers did not have to stop after traveling a certain amount of time, nor were they required to rest for a set period. They could stop for meals when and where they wished, and they were not required to deliver the transfer vehicles by a set time, although they were to have them delivered within a reasonable time.
Rushing said that when he learned that he would be traveling to Jacksonville, he called a friend, who was also on McGriffs list of dealer-transfer drivers, to accompany him on the trip down and who would then drive Schein’s vehicle back to Pelham. As Rushing was driving the pickup truck from Jacksonville on the return trip to Pelham, he was in a collision with another *1207 vehicle on Interstate 85 in Opelika. Rushing suffered serious injuries in the accident.
After the hearing, the trial court entered an order holding that Rushing was an employee of Schein’s at the time of the accident and that he was not an independent contractor. Specifically, the trial court found that Schein had provided Rushing with a vehicle to transport him to the Jacksonville dealership; that it had suggested the route Rushing was to take to and from Jacksonville; that it had provided Rushing with insurance documents and a dealer tag for the pickup truck; that it had directed Rushing in the manner in which he was to inspect the pickup truck before taking possession of it and that, if the vehicle appeared to be damaged, in ill-repair, or did not have all of its designated accessories, he was to call Moore for further instructions and was required to take direction from Moore. In addition, the trial court found that Schein had paid Rushing by check for each dealer-transfer trip he had made and that Rushing had been reimbursed for expenses incurred during the trips. In other words, the trial court determined that Rushing “was given no discretion as to how his mission was to be performed other than that exercised by any driver of any vehicle operated on the public way.” Accordingly, the trial court held, Rushing was an employee and not an independent contractor.
Schein appeals from the judgment of the trial court, contending that it erred in determining that Rushing was its employee rather than an independent contractor.
“Section 25-5-81(e), Ala.Code 1975, provides the standard of review in a workers’ compensation case:
“ ‘(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
“ ‘Our review is restricted to a determination of whether the trial court’s factual findings are supported by substantial evidence. Ala.Code 1975, § 25-5-81(e)(2). This statutorily mandated scope of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual finding; rather, it permits this court to reverse the trial court’s judgment only if its factual finding is not supported by substantial evidence. See Ex parte M & D Mech. Contractors, Inc., 725 So.2d 292 (Ala.1998). A trial court’s findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So.2d 1012 (Ala.Civ.App.1995).’
“Landers v. Lowe’s Home Ctrs., Inc., [14] So.3d [144, 151] (Ala.Civ.App.2007). ‘This court’s role is not to reweigh the evidence, but to affirm the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom.’ Bostrom Seating, Inc. v. Adderhold, 852 So.2d 784, 794 (Ala.Civ.App.2002).”
MasterBrand Cabinets, Inc. v. Ruggs, 10 So.3d 13, 16-17 (Ala.Civ.App.2008).
*1208 It is well established law that, in the context of a workers’ compensation case, when determining whether an employer-employee relationship exists, the courts will look to whether the purported employer has reserved the right to control the manner in which the worker performs the duties of the work. Atchison v. Boone Newspapers, Inc., 981 So.2d 427, 431 (Ala.Civ.App.2007).
“ ‘ “[F]or one to be an employee, the other party must retain the right to direct the manner in which the business shall be done, as well as the result to be accomplished or, in other words, not only what shall be done, but how it shall be done.” ’
“White v. Henshaw, 363 So.2d 986, 988 (Ala.Civ.App.1978) (quoting Weeks v. C.L. Dickert Lumber Co., 270 Ala. 713, 714, 121 So.2d 894, 895 (1960)). In determining ‘whether [an individual] is an independent contractor or whether an employer-employee relationship exists, the court looks to the reserved right of control rather than the actual exercise of control.’ Turnipseed v. McCafferty, 521 So.2d 31, 32 (Ala.Civ.App.1987). If the right of control extends no further than directing what is to be ultimately accomplished, an employer-employee relationship is not established; however, ‘if an individual retains the right to direct the manner in which the task is to be done or if that individual does in fact dictate the manner of operation, then an employer-employee relationship is established.’ Id. at 33. The factors to be considered in determining whether an individual or an entity has retained the right of control include: (1) direct evidence demonstrating a right or an exercise of control; (2) the method of payment for services; (3) whether equipment is furnished; and (4) whether the other party has the right to terminate the employment. See Ex parte Curry, 607 So.2d 230 (Ala.1992).”
Atchison v. Boone Newspapers, Inc., 981 So.2d at 431-32. Furthermore, “ ‘[t]he retention of control necessary to establish employee status is determined on a case-by-case basis.’ Luallen v. Noojin, 545 So.2d 775, 776 (Ala.Civ.App.1989).” Sartin v. Madden, 955 So.2d 1024, 1027 (Ala.Civ.App.2006).
In reaching its decision that Rushing was Schein’s employee, the trial court relied on Ex parte Curry, 607 So.2d 230 (Ala.1992), in which our supreme court reversed this court’s judgment and, in turn, the judgment of the trial court, denying workers’ compensation benefits to an injured worker, a truck driver, on the ground that the worker was an independent contractor and not an employee. In Curry, a man had signed a lease agreement with the defendant, Interstate Express, Inc. (“Interstate”), pursuant to which he obtained a truck and drove cargo for Interstate. Id. at 233. Our supreme court found that Interstate had exercised control over the driver by controlling what loads he picked up, where he picked them up, and where he delivered the cargo. Interstate also told the driver how to handle the cargo. Id. Interstate booked the contracts for the cargo that the driver hauled. The customer would pay Interstate, which would retain a percentage of the proceeds and pay the driver the remainder. Thus, the supreme court held, Interstate controlled the driver’s payment. Id. Interstate also provided equipment to the driver, including the truck and the various permits and insurance required, and it paid fuel and mileage taxes. The driver also had the right to end the lease agreement upon 30 days’ written notice. In applying the factors previously quoted in Atchison to the facts in Curry, our supreme court held that the evidence did not *1209 support the trial court’s determination that the driver was an independent contractor.
As this court noted in Sartin, “ ‘[n]o one fact by itself can create an employer-employee relationship.’ ” (Quoting Luallen v. Noojin, 545 So.2d at 776.) In this case, although it is true that Schein supplied Rushing with a “chase” car, a dealer tag, and insurance, we conclude that its control over Rushing extended no further than directing what Rushing was ultimately to accomplish, i.e., the transfer of a specific vehicle from the dealership in Jacksonville to Schein’s dealership. McGriff, the man who maintained the list of transfer drivers and who was not a Schein employee, chose Rushing’s name from the list of possible drivers to make this particular transfer. Rushing could accept or decline any transfer that McGriff offered, and he could choose the dealerships for which he would drive. Rushing, not Schein, chose the individual who would travel in the chase car. Rushing could travel any route he chose for the trip to and from Jacksonville. He was free to make any stops he wished along the way. When the delivery was made and Schein had paid Rushing for the transfer, Schein and Rushing had no further obligations to one another. None of the standard formalities of employment exist in this case. For example, Rushing never applied for a job with Schein; he did not complete income-tax withholding forms; there was no “employment” from which Schein could terminate Rushing; and Rushing had no scheduled work hours, no health insurance, and no vacations or holidays. In short, Rushing made dealer transfers when and if he desired, for whom he desired. Based upon his tax returns, Rushing recognized that he was not an “employee” of Schein’s or any other automobile dealer. From the record, it appears that, before the accident, neither party considered Rushing and Schein to have an employer-employee relationship.
In reviewing the totality of the evidence in this case, see Sartin, supra, we conclude that the trial court’s judgment holding that Rushing was an employee of Schein’s and not an independent contractor is not supported by substantial evidence. Accordingly, the judgment of the trial court is reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
APPLICATION OVERRULED; OPINION OF JANUARY 28, 2011, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
PITTMAN and BRYAN, JJ., concur.
THOMAS and MOORE, JJ., concur in the result, without writings.

. In his lawsuit, Rushing had also named as a defendant the driver of the other vehicle involved in the accident, and he sought under-insured-motorist benefits from Universal Underwriters Insurance Company (''Universal”). Before the final judgment was entered, both the driver and Universal had been dismissed from the action because they had reached pro tanto settlement agreements with Rushing. The record indicates that, in calculating the workers’ compensation benefits to which Rushing was entitled, the trial court took into account the insurance proceeds Rushing already had received from the tortfeasor’s insurance carrier.