PER CURIAM.
Michael K Brown sued Dixie Contracting Company (“Dixie”) and Salter’s Exterminating Company, Inc. (“Salter’s”), in addition to several others, in connection with injuries he received in an automobile accident (“the accident”).[1] In the action, Brown alleged that the accident occurred during the line and scope of his employment with Dixie and Salter’s, and he sought workers’ compensation benefits from them. In his first amended complaint, Brown alleged that Dixie did business as Salter’s. Both Dixie and Salter’s asserted that Brown was an independent contractor and not their employee and, therefore, that he was not entitled to receive workers’ compensation benefits from them.
Brown requested a separate trial on the workers’ compensation claim, and he asked that that claim be tried first. The trial court granted Brown’s request, but the matter remained “consolidated” for purposes of discovery. At trial, among the issues litigated were whether Brown’s employment with the defendants was as an employee or an independent contractor and the nature of the business relationship between Dixie and Salter’s. Brown asserted that he was an employee of both Dixie and Salter’s.
Evidence was disputed regarding the manner in which Brown was paid and how closely he was supervised. Salter’s payroll documents list him as an “employee.” The payroll documents pertaining to Brown’s employment before the accident indicate that Brown was paid at a rate of $80 a day, which is $400 for a five-day workweek.
Bobby Martin testified that he was Brown’s supervisor at Salter’s. Martin said that, in his opinion, Brown was an “employee at will” who could be fired at any time. Brown testified that his supervisor, Martin, would tell him on a given day whether he was to sell pest-control services or was to work construction.
Brown asserted that Dixie and Salter’s were essentially the same business. Evidence introduced by Salter’s indicates that both businesses are owned by John “Butch” Salter (“Butch”), that they are operated out of the same building, and that *202 they share a secretary and receptionist. The insurance policy on the company vehicle issued to Brown indicates that Butch, doing business as Dixie and as Salter’s, owns the vehicle and is the policyholder.
At the trial evidence was presented indicating that Salter’s sells and services pest-control and termite-protection agreements and provides the services for those agreements. The evidence further indicates that Dixie makes repairs to homes and commercial structures that have been damaged by termites. Evidence suggests that Salter’s employees are instructed to tell clients to use Dixie to make repairs to any damage termites might have caused their homes or buildings.
Salter’s and Dixie presented evidence in support of their assertion that, although the two “were intertwined and may have fed off each other,” they were two separate businesses; Salter’s is incorporated, and Dixie is a sole proprietorship owned and operated by Butch. Evidence indicates that Brown was paid from Salter’s accounts and that he received no wages from Dixie. However, there is evidence indicating that a number of employees who were paid by Salter’s performed jobs for both Dixie and Salter’s.
After the trial, Brown sought leave from the trial court to amend his complaint to name as a defendant John L. Salter doing business as Dixie Contracting Company and Salter’s Exterminating Company, Inc. In his motion for leave to amend his complaint, Brown stated that he was seeking to conform his pleading to the evidence presented at trial. The trial court denied the motion.
Subsequently, the trial court entered the following order, which is set forth in its entirety:
“This case came before the court on November 28, 2012, on the bifurcated portion of the case, the worker’s com- • pensation action. After review of the pleadings and consideration of the evidence presented and the arguments of counsel, the court issues the following order:
“It is ORDERED, ADJUDGED, AND DECREED that the court finds that “1. The Plaintiff Michael K. Brown was an independent contractor of Salter’s Exterminating at any and all relevant times when the accident which is the subject of this action is alleged to have occurred, and therefore not subject to any worker’s compensation claim against Salter’s. It is noted that the accident is alleged to have occurred on either May 23rd or May 30th of 2008.
“2. Additionally, the court finds that [Brown] did not perform any work for the Defendant Dixie Contracting Company until after the accident occurred. Therefore, [Brown] does not have a claim for worker’s compensation benefits against the Defendant Dixie Contracting Company.
“3. Accordingly, [Brown] is not due to recover under the worker’s compensation claim(s) presented.
“4. The court does NOT reach the issues of:
“• The date of the accident
“• The fact of any injury
“• The extent of any injury
“• Any other claims or defenses that are reserved for the jury’s determination in this case
“DONE this 2nd day of January, 2013.”
(Capitalization in original.)
Brown filed a postjudgment motion, which was denied. He then appealed the trial court’s order denying his claim for workers’ compensation benefits. Because the trial court’s order of January 2, 2013, *203 did not dispose of all the claims and controversies between all the parties, it was not a final judgment that would support an appeal. Powers v. Nikonchuk, 142 So.3d 713, 714 (Ala.Civ.App.2013); Heaston v. Nabors, 889 So.2d 588, 590 (Ala.Civ.App.2004). Accordingly, this court reinvested the trial court with jurisdiction to determine whether certifying the order as final pursuant to Rule 54(b), Ala. R. Civ. P., was appropriate and, if so, to enter a judgment to that effect. On October 30, 2013, the trial court entered a judgment certifying the January 2, 2013, order denying Brown’s claim for workers’ compensation benefits as final pursuant to Rule 54(b). Accordingly, we now review the propriety of the January 2, 2013, order denying Brown’s claim for worker’s compensation benefits.
On appeal, Brown contends that the January 2, 2013, order does not include adequate findings of fact and conclusions of law, as required by § 25-5-88, Ala.Code 1975. He also asserts that the trial court’s finding that he is an independent contractor is not supported by substantial evidence.
In Weaver v. Pilgrim’s Pride Corp., 106 So.3d 417 (Ala.Civ.App.2012), this court discussed § 25-5-88:
“Section 25-5-88 requires a trial court to make findings of fact and conclusions of law in workers’ compensation judgments. Alabama law requires only substantial compliance with § 25-5-88, and meager or omissive findings of fact or conclusions of law do not necessarily require a reversal of a workers’ compensation judgment. See Ex parte Curry, 607 So.2d 230, 232 (Ala.1992); Calvert v. Funderburg, 284 Ala. 311, 224 So.2d 664 (1969) (construing the predecessor statute to § 25-5-88). A trial court, however, must make findings of fact and state conclusions of law that are responsive to the issues presented at trial. Equipment Sales Corp. v. Gwin, 4 So.3d 1125, 1129-30 (Ala.Civ.App.2008).
“‘“The purpose of Ala.Code 1975, § 25-5-88, is to ‘ensure sufficiently detailed findings so that the appellate court can determine whether the judgment is supported by the facts.’ ” Farris v. St. Vincent’s Hasp., 624 So.2d 183, 185 (Ala.Civ.App.1993) (quoting Elbert Greeson Hosiery Mills, Inc. v. Ivey, 472 So.2d 1049, 1052 (Ala.Civ.App.1985)). “[T]he trial court has a duty to make a finding on each issue presented and litigated before it. In instances where the trial court fails to make a finding responsive to the issue presented, the case must be reversed.” Thomas v. Gold Kist, Inc., 628 So.2d 864, 867 (Ala.Civ.App.1993); see also Harbin v. United States Steel Corp., 356 So.2d 179 (Ala.Civ.App.1978); and Dun & Bradstreet Corp. v. Jones, 678 So.2d 181 (Ala.Civ.App.1996). In Harbin v. United States Steel Corp., this court reversed the trial court’s judgment and remanded the case because the trial court had failed to address or to make findings regarding the issue of notice of injury to the employer, despite the issue being presented and litigated.’ ”
106 So.3d at 419 (quoting Equipment Sales Corp. v. Gwin, 4 So.3d 1125, 1129 (Ala.Civ. App.2008)).
We agree with Brown that the findings of fact set forth in the order are meager at best. Our supreme court has held that appellate courts can review the record in workers’ compensation cases in which the findings of fact are meager or omissive. Ex parte Curry, 607 So.2d 230, 232 (Ala.1992). This court also has held that, “[i]f the trial court’s findings are meager or omissive, this court may look to the record to determine if the trial court’s judgment *204 should be upheld.” McCutcheon v. Champion Int’l Corp., 623 So.2d 742, 743 (Ala.Civ.App.1993); see also Massey Chevrolet, Inc. v. Aderhold, 991 So.2d 750, 751 (Ala. Civ.App.2008) (same); Landers v. Lowe’s Home Ctrs., Inc., 14 So.3d 144 (Ala. Civ.App.2007) (same). Therefore, pursuant to the standard of review set forth below, we will review the evidence in the record to see whether substantial evidence supports the trial court’s determination that Brown was an independent contractor and not an employee of Salter’s and/or Dixie.
“Section 25-5-81(e), Ala.Code 1975, provides the standard of review in a workers’compensation case:
“‘(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
“ ‘Our review is restricted to a determination of whether the trial court’s factual findings are supported by substantial evidence. Ala.Code 1975, § 25-5-81(e)(2). This statutorily mandated scope of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual finding; rather, it permits this court to reverse the trial court’s judgment only if its factual finding is not supported by substantial evidence. See Ex parte M & D Mech. Contractors, Inc., 725 So.2d 292 (Ala.1998). A trial court’s findings of fact on con- , flicting evidence are conclusive if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So.2d 1012 (Ala.Civ.App.1995).’
“Landers v. Lowe’s Home Ctrs., Inc., [14] So.3d [144, 151] (Ala.Civ.App.2007). ‘This court’s role is not to reweigh the evidence, but to affirm the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom.’ Bostrom Seating, Inc. v. Adderhold, 852 So.2d 784, 794 (Ala.Civ.App.2002).”
MasterBrand Cabinets, Inc. v. Ruggs, 10 So.3d 13,16-17 (Ala.Civ.App.2008).
In his brief on appeal, Brown makes the conclusory assertion that Salter’s and Dixie are the same business entity; however, Brown cites no authority and makes no legal argument to support that proposition. At trial, the issue of the relationship between Salter’s and Dixie was litigated, but the trial court made no explicit findings regarding that issue in its order. As mentioned, the trial court found that Brown was an independent contractor of Salter’s and also found that Brown had not performed any work for Dixie at the time the accident occurred. The trial court also stated that it did not reach the issue of the date of the accident, among other issues. To the extent the order can be read as making an implicit finding that Salter’s and Dixie were two separate entities, Brown has failed to make a legal argument that such a finding was error. “Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support that party’s position. If they do not, the arguments are waived.” WMie Sands Grp., L.L.C. v. PRS II, LLC, 998 *205 So.2d 1042, 1058 (Ala.2008). Accordingly, we affirm that portion of the order concluding that Brown had not worked for Dixie at the time of the accident and that Dixie was not liable to Brown for workers’ compensation benefits.
Additionally, in his statement of the issues, Brown includes the issue whether the trial court erred in failing to allow him leave to substitute “John L. Salter d/b/a/ Dixie Contracting Company and Salter’s Exterminating in lieu of Dixie Contracting Company; Dixie Contracting Company d/b/a Salter’s Exterminating.” He does not refer to that issue in the argument portion of his brief, however. When an appellant fails to properly argue an issue, that issue is waived and will not be considered. Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982). Thus, this court will not consider this issue.
As to the issue whether the trial court erred in determining that Brown was an independent contractor of Salter’s, in determining a similar issue, this court has stated:
“It is well established law that, in the context of a workers’ compensation case, when determining whether an employer-employee relationship exists, the courts will look to whether the purported employer has reserved the right to control the manner in which the worker performs the duties of the work. Atchison v. Boone Newspapers, Inc., 981 So.2d 427, 431 (Ala.Civ.App.2007).
“ ‘ “ ‘[F]or one to be an employee, the other party must retain the right to direct the manner in which the business shall be done, as well as the result to be accomplished or, in other words, not only what shall be done, but how it shall be done.’ ”
“ ‘White v. Henshaw, 363 So.2d 986, 988 (Ala.Civ.App.1978) (quoting Weeks v. C.L. Dickert Lumber Co., 270 Ala. 713, 714, 121 So.2d 894, 895 (1960)). In determining “whether [an individual] is an independent contractor or whether an employer-employee relationship exists, the court looks to the reserved right of control rather than the actual exercise of control.” Tur-nipseed, v. McCafferty, 521 So.2d 31, 32 (Ala.Civ.App.1987). If the right of control extends no further than directing what is to be ultimately accomplished, an employer-employee relationship is not established; however, “if an individual retains the right to direct the manner in which the task is to be done or if that individual does in fact dictate the manner of operation, then an employer-employee relationship is established.” Id. at 33. The factors to be considered in determining whether an individual or an entity has retained the right of control include: (1) direct evidence demonstrating a right or an exercise of control; (2) the method of payment for services; (3) whether equipment is furnished; and (4) whether the other party has the right to terminate the employment. See Ex parte Curry, 607 So.2d 230 (Ala.1992).’
“Atchison v. Boone Newspapers, Inc., 981 So.2d at 431-32. Furthermore, ‘ “[t]he retention of control necessary to establish employee status is determined on a case-by-case basis.” Luallen v. Noojin, 545 So.2d 775, 776 (Ala.Civ.App. 1989).’ Sartin v. Madden, 955 So.2d 1024,1027 (Ala.Civ.App.2006).”
Susan Schein Chrysler Dodge, Inc. v. Rushing, 77 So.3d 1203, 1208 (Ala.Civ.App.2011). Furthermore, “[n]o one fact by itself can create an employer-employee relationship.” Luallen v. Noojin, 545 So.2d 775, 776 (Ala.Civ.App.1989); see also Hooker Constr., Inc. v. Walker, 825 So.2d 838, 843 (Ala.Civ.App.2001).
*206 Brown presented evidence indicating that Butch, the owner of Salter’s, Butch’s son Johnny Salter (“Johnny”), and Martin had talked to him about coming to work for them. Brown, who had previously worked as a manager for another pest-control company, testified that the three' men came to his house to talk and that Martin told Brown he would be hired to work “in sales.” Brown said that, at the time he was hired, Butch, Johnny, and Martin did not specify whether they were hiring him as an employee or as an independent contractor. None of the parties contends that Brown signed a contract with Salter’s or Dixie. Brown said he considered himself to be an employee of Salter’s and/or Dixie. He also testified that he was supervised by Martin, that he had to report to the office each morning, that he was told when to be at work, and that he was “pretty much” told when he could leave. Brown said that he was expected to do the sales, exterminating, or construction jobs Martin told him to do and to follow the sales leads provided by Martin. If he was not provided with sales leads, he said, he could make “cold calls.”
Brown had worked only about two months before the accident occurred. After the accident, Brown said, he was “put on a route” to perform pest control. On the route, Brown said, he was to complete 100 “tickets” a month. When he completed his route, he said, Martin would then have him do work on the construction side of the business, i.e., for Dixie. Brown testified that, at any given time, Martin would know the contacts he had remaining on his route because, he said, Martin kept a running total based on the paperwork Brown turned in to him. Brown further testified that if he found termite damage, his instructions were to call Dixie so that someone from Dixie could immediately go to the site and provide the customer with a quote to repair the damage. Martin confirmed Brown’s understanding that Brown was to call him if he discovered termite damage, and he stated that when he received such a call he would go to the site as quickly as possible to provide an estimate of the cost of repairs.
Salter’s and Dixie presented evidence indicating that, when Brown was hired, Salter’s provided him with a company vehicle and included him as an insured on the company’s automobile-insurance policy. Salter’s gave Brown an insurance card to use in connection with the company vehicle. Salter’s payroll sheets list Brown as an employee.
Martin was the only individual from Salter’s or Dixie to testify. He said that he hired Brown to work for Salter’s as a “subcontractor” in sales, and he also testified that Brown was an “at-will employee” who could be fired for any reason. Martin said that he was Brown’s supervisor. He testified that Brown was required to report to work by 8 a.m. Martin also said that, “if we had any leads for that day, [Brown] would be issued those leads.” Otherwise, Brown was to make cold calls. Martin did not go out on those calls with Brown.
As to the method of Brown’s pay, Martin testified that Brown was hired as a “1099 employee” who “would have been on draw against commissions and sales.” There is no dispute that Brown was issued a Form 1099 for income-tax purposes. In addition, Salter’s did not provide Brown with health insurance. We note that in Sartin v. Madden, 955 So.2d 1024, 1030 (Ala.Civ.App.2006), this court reversed a summary judgment in favor of the employer, holding that, although the employer deducted no taxes from the worker’s paychecks and provided the worker with no benefits, that evidence alone was not controlling as to a determination of the exis *207 tence of an employer-employee relationship.
Brown testified that when he was hired he was told he would earn a salary of $400 a week. When questioned by Salter’s attorney, Brown said that when he was in sales he earned $400 each week; when he was on a “pest route” after the accident, he was paid based on his production, which, Brown said, sometimes resulted in his earning less than $400 a week. From the record, it appears that Brown was not paid more than $400 a week regardless of the number of sales he made. The payroll sheets from the weeks leading up to the date of the accident, whether it was May 23 or May 30, 2008,[2] indicate that Brown was to -be paid at a rate of “$80/day.” When asked whether he was paid commissions on his sales, Brown said: “If I got paid commissions on anything that I sold, I should have made more than $400, but I didn’t.” Brown also testified that when he performed construction work he was paid hourly. Salter’s did not present any evidence to dispute Brown’s testimony that he was paid differently depending on whether he was performing sales, pest-control, or construction work.
In considering the factors used to determine whether an individual or an entity has retained the right of control — i.e.,' “ ‘(1) direct evidence demonstrating a right or an exercise of control; (2) the method of payment for services; (3) whether equipment is furnished; and (4) whether the other party has the right to terminate the employment,’ ” Susan Schein Chrysler Dodge, Inc., 77 So.3d at 1208 — we find that Salter’s controlled nearly every aspect of Brown’s employment. Applying the foregoing factors, we note that Salter’s dictated whether Brown would perform tasks in sales, pest control, or construction as Salter’s or Dixie needed. Salter’s controlled the manner in which Brown would be paid for the different jobs he did, and it capped his weekly pay at $400 regardless of the amount of sales Brown may have made, undermining Salter’s contention that it .paid Brown on a commission basis when he was making sales for Salter’s. Salter’s also provided Brown with a company vehicle and issued an insurance card to Brown that included him as an insured on Salter’s automobile-insurance policy. Martin testified that he considered Brown an “at-will employee” whose employment could be terminated at any time; likewise, Brown said he believed he could quit the job at any time.
In reviewing the totality of the evidence in this case, see Sartin, supra, we conclude that the trial court’s order holding that Brown was an independent contractor of Salter’s is not supported by substantial evidence. Accordingly, that portion of the order finding that Brown was an independent contractor of Salter’s is reversed, and the cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
All the judges concur.

. Brown and his wife, Lois, sued Memory Brantley Wallace, the driver of the other vehicle involved in the accident, alleging negligence and wantonness. Also named as defendants in the action were Brown’s insurance carrier, GEICO General Insurance Company, and the underinsured-motorist insurance carrier for Dixie and Salter's, Allstate Indemnity Company. In their briefs on appeal, the parties have not set forth any of the details regarding the accident itself.

. In its order, the trial court explicitly stated that it had not reached the issue of the date of the accident.