BRYAN, Judge.
Russell Benton (“Russell”) and Jason Benton (“Jason”) appeal from a summary judgment in favor of Clegg Land Co., Ltd. (“Clegg”), Speaks Land Company, and Ken Buce. We affirm.

Facts

Sometime before 2002, Curtis Adams and his wife contracted for Don Casey to construct a 10-acre lake (“the lake”) on a 646-acre parcel of recreational property (“the property”) in Macon County that Adams and his wife then owned. Casey constructed the lake with a dam on one side; one side of the dam faced the lake, and the other side faced dry land. Subsequent to the construction of the lake, Adams and his wife sold the property to Clegg in 2002. Thereafter, Clegg enlarged the existing cabin on the property, built a pole barn, improved the hunting facilities on the property, and improved the roads on the property. Clegg’s owners used the property for hunting and fishing.
Within a year of Clegg’s purchasing the property, Clegg’s owners noticed that the water level in the lake would fluctuate. In 2003, Clegg asked Casey to inspect the lake to determine why the water level in the lake fluctuated. Casey used a bulldozer and a small excavator to remove dirt from the side of the dam that faced dry land. He found some dampness in the soil on that side of the dam, which indicated that water was seeping or leaking out of the lake, but he did not find a hole or any other explanation for the seepage or leak. Casey informed Clegg that he did not know what could be done to stop the seepage or leak and restored the dirt he had removed to its original location.
Subsequently, Clegg decided to sell the property and listed it for sale with Speaks Land Company for $3,250 per acre. After the property was listed for sale, members of the Clegg family, with the assistance of Harold Dennis, who lived near the property, and Dennis’s daughter, put 10,000 to 12,000 pounds of bentonite[1] in the lake near the dam to see if the bentonite would *875 stop the seepage; however, the water level in the lake continued to fluctuate. Clegg did not take any other action to stop the water level from fluctuating.
After the property had been listed for sale for approximately 9 to 12 months, Jason contacted Speaks Land Company and asked to see the property. Jason and his father Russell are both experienced in the purchasing of land and own businesses that own land in several states. Tim Speaks, the owner of Speaks Land Company, and Buce, the qualifying real-estate broker for Speaks Land Company’s office in Union Springs, met Jason and Russell at the property on October 11, 2007, when Macon County was experiencing a drought, and Speaks and Buce showed Jason and Russell the property. Jason testified in his deposition that, while Speaks and Buce were showing them the property, he and Russell noticed that the water level in the lake was low and that they asked Speaks and Buce why the water level was low and whether there was a problem with the lake. Jason testified that Speaks and Buce said that the water level was low due to the drought and that there was no problem with the lake.
After seeing the property, Jason signed a contract to purchase the property (“the contract”) and asked Buce to see if Clegg would agree to sell the property on the terms stated in the contract. The contract listed the purchasers as Jason and Russell and provided that the total purchase price was $1,950,000, that the contract would expire on November 26, 2007, that the sale had to be closed on or before that date, and that time was of the essence. In addition, the contract contained the following provisions:
“Condition of Property: Neither Seller nor any Agent makes any representations or warranties regarding the condition of the Property except to the extent expressly and specifically set forth herein. Purchaser has the obligation to determine, either personally or through or with a representative of Purchaser’s choosing, any and all conditions of the Property material to Purchaser’s decision to buy the Property, including without limitation!:] Subsurface condition, including the presence of absence of sinkholes, mining activity, wells, or buried tanks and other objects!;] soil conditions; utility and sewer or septic tank availability and condition. Except as otherwise stated in this Contract or addenda, Purchaser accepts the Property in its present MS IS’ condition.
[[Image here]]
“NO ORAL STATEMENT, REPRESENTATION, PROMISE, OR INDUCEMENT SHALL HAVE ANY VALIDITY NOR SHALL BE A PART OF THIS AGREEMENT. All covenants, promises, and understandings written herein survive the closing. All rights, privileges, obligations and duties hereby granted or assumed shall inure to the benefit of and shall be binding upon successors, assigns, heirs, administrators and executors of the parties hereto. “DISCLAIMER
“The Seller and Purchaser hereby acknowledge and confirm that this contract states the entire agreement between the parties hereto and no modification of this contract shall be binding unless attached hereto and signed by all parties. The Seller and Purchaser further acknowledge that neither of them have relied upon the representations, covenants, statements, warranties, or advice of any Broker, or agent of any Broker related to the legal and tax consequences of this contract or any other aspect of this contract unless expressly stated herein, including but *876 without limitations, the square footage, acreage, condition of the house and fixtures, the operating conditions, the electrical, heating, plumbing, water heating system and appliances, the availabilities of utilities to the property or the investment potential or resale value of the property made to the Seller or the Purchaser by the Seller, Seller’s Broker or agent or buyer’s Broker or agent or any person whatsoever. Purchaser and Seller have entered into this agreement based upon their own inspection and personal knowledge of this property and any financial agreements concerning said property. The Seller and Purchaser both acknowledge that if any such matter as enumerated herein has been of concern to them, they have sought and obtained independent advice relating thereto.”
(Capitalization original; emphasis added.) The contract did not contain any representations regarding the condition of the lake. Indeed, the contract did not even mention the lake. Moreover, the contract did not state that the purchasers’ obligation to purchase the property was conditioned on the lake being free from defects or the purchasers’ investigating the lake and determining that its condition was satisfactory to them. Along with the contract, Jason gave Buce a check in the amount of $100,000, which was to be held in escrow as earnest money if Clegg agreed to sell the property on the terms stated in the contract.
Clegg agreed to sell the property on the terms stated in the contract and signed the contract on October 15, 2007. Jason testified in his deposition that, after Clegg signed the contract, he communicated to Buce that he wanted to close the sale on a specific date, although he could not remember what that specific date was, and that he and Russell wanted to have access to the property before the closing. Jason further testified that Buce later informed him that Clegg would not agree to close on the specific date Jason had requested and would not agree that Jason and Russell could have access to the property before the sale was closed. Jason testified that, as a result of Clegg’s refusal to close on the specific date he had requested and to allow Jason and Russell to have access to the property before the closing, he stopped payment on his $100,000 earnest-money check and that, in response to his stopping payment on that check, Clegg threatened to sue him. However, it is undisputed that, on October 16, 2007, Jason and Clegg agreed that the sale would be closed on November 9, 2007. Moreover, it is undisputed that the sale was actually closed on November 5, 2007. Although Russell never signed the contract, he admitted in his deposition that he and Jason had jointly purchased the property, that they had both signed a promissory note to finance the purchase of the property, and that he had signed the closing statement.
After purchasing the property, Jason and Russell made improvements to the property, which included constructing a lodge beside the lake and constructing two permanent docks on the lake. However, they discovered that the water level in the lake stayed low except for short periods immediately following a heavy rain. Jason testified that, when the water level was low, 80 to 40 feet of shoreline was exposed and the permanent docks were above the head of anyone in a boat on the lake. Russell testified that he and Jason had purchased the property to entertain clients, that they had intended for the lake to be the “jewel” of the property, and that the low water levels made the lake an eyesore rather than a jewel.
Jason testified that, before he and Russell filed their action against Clegg, Speaks *877 Land Company, and Buce, he had discussed the problem with the water level in the lake with Adams and that Adams had told him that Clegg had had Casey work on the lake after Adams sold it to Clegg, that Clegg had ruined the lake, and that, when Casey completed his work on the lake, Clegg knew that the lake would not stay full of water. Jason also testified that, before he and Russell filed the action, Russell had met with Casey “and that’s when we determined that this was — this was fraudulently misrepresented.” Russell testified that Jason had also discussed the problem with the water level in the lake with Dennis before they filed their action.

Procedural History

On August 9, 2009, Jason and Russell sued Clegg, Speaks Land Company, and Buce,[2] claiming (1) that Clegg, Speaks Land Company, and Buce had committed various forms of fraud by allegedly misrepresenting that the lake was low due to the drought and that there was no problem with the lake, (2) that Clegg, Speaks Land Company, and Buce had committed various forms of fraud by allegedly suppressing the fact that there was a material defect in the lake, (3) that Clegg, Speaks Land Company, and Buce had breached the contract by selling Jason and Russell property with a defective lake, (4) that Clegg, Speaks Land Company, and Buce had been unjustly enriched by selling Jason and Russell property with a defective lake, (5) that Clegg, Speaks Land Company, and Buce had negligently hired, trained, or supervised their agents, and (6) that Clegg, Speaks Land Company, and Buce had committed the tort of bad faith by allegedly misrepresenting and suppressing material facts in connection with the sale of the property to Jason and Russell. Clegg, Speaks Land Company, and Buce answered the complaint and, after discovery had been conducted, filed summary-judgment motions with supporting evidence and briefs.
Clegg, Speaks Land Company, and Buce asserted that they were entitled to summary judgments with respect to the claims of misrepresentation, suppression, and negligence because, they said, those claims were barred by the doctrine of caveat emptor and the “as is” clause in the contract. They also asserted that they were entitled to summary judgments with respect to the misrepresentation and suppression claims because, they said, Jason and Russell could not establish that they had reasonably relied on the alleged misrepresentation and suppression. In addition, Clegg, Speaks Land Company, and Buce asserted that they were entitled to summary judgments with respect to the negligence claim because, they said, they did not owe Jason and Russell a duty of care and Jason and Russell had assumed the risk. Moreover, Clegg, Speaks Land Company, and Buce asserted that they were entitled to summary judgments with respect to the breach-of-contract claim because, they said, they had not breached the contract — Jason and Russell had contracted to purchase the property “as is,” and they had received the property in that condition. Clegg, Speaks Land Company, and Buce asserted that they were entitled to summary judgments with respect to the unjust-enrichment claim because, they said, Jason and Russell had contracted to purchase the property in “as is” condition for $1,950,000, they received the property in that condition for $1,950,000, and, therefore, Clegg, Speaks Land Company, and *878 Buce had not been unjustly enriched by Jason and Russell’s payment of the $1,950,000. Finally, Clegg, Speaks Land Company, and Buce asserted that they were entitled to summary judgments with respect to the bad-faith claim because, they said, a bad-faith claim depended on the existence of an insurance contract between the parties and no insurance contract existed between Jason and Russell, on the one hand, and Clegg, Speaks Land Company, or Buce, on the other.
Jason and Russell filed evidence and a brief in opposition to the summary-judgment motions. In their brief in opposition to the summary-judgment motions, Jason and Russell asserted that their suppression claims were not barred by the doctrine of caveat emptor because, they said, Clegg, Speaks Land Company, and Buce knew that there was a defect in the lake, the defect was not readily discoverable by Jason and Russell, and, therefore, Clegg, Speaks Land Company, and Buce had a duty to disclose it. In addition, they asserted that their misrepresentation claims were not barred by the doctrine of caveat emptor because, they said, they had specifically asked Speaks and Buce why the water level in the lake was low and whether there was a problem with the lake and that Speaks and Buce had misrepresented that the water level was low due to the drought and that there was no problem with the lake.
Jason and Russell asserted that their misrepresentation and suppression claims were not barred by the “as is” provision in the contract because, they said, (1) Russell did not sign the contract, (2) neither Jason nor Russell drafted the contract — it was a fill-in-the-blanks contract that Buce provided, and (3) the inclusion of a provision conditioning their obligation to purchase the property on their determining that the lake was satisfactory to them would have been futile because, they said, Clegg had denied them access to the property between the date Clegg signed the contract and the date the sale closed. Jason and Russell asserted that Clegg, Speaks Land Company, and Buce were not entitled to summary judgments with respect to the negligence claim because, Jason and Russell said, Clegg, Speaks Land Company, and Buce did indeed owe Jason and Russell a duty of care and Jason and Russell had not assumed the risk. Finally, Jason and Russell asserted that Clegg, Speaks Land Company, and Buce were not entitled to a summary judgment with respect to the breach-of-contract and unjust-enrichment claims because, they said, they wanted a parcel of property with a lake that would be the “jewel” of the parcel, which they could use to entertain clients, they did not receive a parcel with such a lake, and, therefore, they did not receive what they had paid for.
In addition to filing evidence and a brief in opposition to the summary-judgment motions, Jason and Russell also filed a Rule 56(f), Ala. R. Civ. P., affidavit seeking the opportunity to depose Adams, Casey, and Dennis before the trial court ruled on the summary-judgment motions. Jason and Russell asserted that they needed to depose Adams, Casey, and Dennis in order to oppose the summary-judgment motions because, they said, Adams could provide testimony regarding “who created the defect in the lake and when it was created” and Casey and Dennis could provide testimony regarding the work they had performed on the lake while Clegg owned the property.
Following a hearing on May 18, 2011, the trial court, on June 28, 2011, entered a summary judgment in favor of Clegg, Speaks Land Company, and Buce without stating its rationale. On July 18, 2011, Jason and Russell filed a motion to alter, *879 amend, or vacate the June 28, 2011, judgment, which was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P. Jason and Russell then timely appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.

Standard of Review

“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ ‘We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we Anew the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
“Nationwide Prop. & Cas. Ins. Co.[ v. DPF Architects, P.C.], 792 So.2d [869] at 372 [ (Ala.2000) ] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).

Analysis

I. Misrepresentation and Suppression Claims
Jason and Russell argue that the trial court erred in entering a summary judgment with respect to their misrepresentation and suppression claims because, they say, (1) Clegg, Speaks Land Company, and Buce knew of a defect in the lake that was not knoAvn or readily observable by Jason and Russell and, therefore, Clegg, Speaks Land Company, and Buce had a duty to disclose it, which they breached, (2) Jason and Russell asked Speaks and Buce why the water level of the lake was low and whether there was a problem Avith the lake and Speaks and Buce misrepresented that the water level was low due to the drought and that there was no problem Avith the lake, and (3) Russell did not sign the contract and, therefore, was not bound by the “as is” clause in the contract.
In Moore v. Prudential Residential Services Limited Partnership, 849 So.2d 914, 923-25 (Ala.2002), the supreme court stated:
“Although Alabama has abrogated the rule of caveat emptor in the sale of new real estate, that rule still applies in the sale of used real estate. Blaylock v. Cary, 709 So.2d 1128, 1130 (Ala.1997); Ray v. Montgomery, 399 So.2d 230, 233 (Ala.1980). Thus, in the sale of used real estate, a seller or the seller’s agent generally has no duty to disclose to the purchaser any defects in the property. Blaylock, 709 So.2d at 1130; Cato v. Lowder Realty Co., 630 So.2d 378, 382 (Ala.1993). However, this Court has recognized exceptions to this rule:
“‘Under § 6-5-102, Ala.Code, 1975, the seller has a duty to disclose defects to a buyer if a fiduciary relationship exists between the parties. In addition, if the buyer specifically inquires about a material condition concerning the property, the seller has an obligation to disclose knoAvn defects.’
“Commercial Credit Corp. v. Lisenby, 579 So.2d 1291, 1294 (Ala.1991).
*880 “ ‘Moreover, if the agent (whether of the buyer or of the seller) [or the seller] has knowledge of a material defect or condition that affects health or safety and the defect is not known to or readily observable by the buyer, the agent [or seller] is under a duty to disclose the defect and is liable for damages caused by nondisclosure.’
“Fennell Realty Co. v. Martin, 529 So.2d 1003, 1005 (Ala.1988). See also Blaylock, 709 So.2d at 1131.
[[Image here]]
“Where a purchaser’s direct inquiry would otherwise impose a duty of truthful disclosure, this Court has held that a purchaser’s fraud claim is precluded by language in a sales contract stating that the purchase is ‘as is.’ Leatherwood, Inc. v. Baker, 619 So.2d 1273, 1274 (Ala.1992); Haygood v. Burl Pounders Realty, Inc., 571 So.2d 1086, 1089 (Ala.1990); Massey v. Weeks Realty Co., 511 So.2d 171, 173 (Ala.1987). In Massey, after the purchaser noted damage to some exterior columns, the real estate agent stated that the damage was caused by dry rot and that the damage was inexpensively remedied. The purchaser then signed an ‘as is’ contract for the purchase of the house without having the house inspected for termites. The contract further provided that the realtor did not warrant or guarantee the condition of the property. After he moved into the house, the purchaser found that the house was infested with termites. This Court held that the purchaser ‘did not have the right to rely on the oral representations of [the agent] made prior to the execution by [the purchaser] of the form containing the “as is” provision and the purchase agreement that provided that the realtor did not warrant or guarantee the condition of the property.’ Massey, 511 So.2d at 173.
“In Haygood, the buyers asked the sellers, themselves real estate agents, if the basement had ever leaked, and the sellers replied, ‘[N]o, it is well constructed.’ There was evidence, however, indicating that the sellers had had repair work performed in the basement because of cracks in the foundation walls that had permitted water to penetrate the basement. The buyers signed an ‘as is’ contract for the purchase of the house. The sales contract also contained a clause that stated:
“ ‘ “Neither the Seller nor the Broker have made or make any other representations about the condition of the property and the Purchaser agrees that he has not relied on any other representation....” ’
“571 So.2d at 1089. After holding that the Haygoods had not alleged that they had relied on the misrepresentations, this Court concluded that ‘even if they had made such an allegation, the plaintiffs’ signing of the two documents that indicated no reliance would have made the summary judgment ... proper.’ 571 So.2d at 1089.
“In Leatherwood, the purchasers asked a real estate agent to inquire about the foundation of a house they were interested in purchasing. The real estate agent contacted the agent who had previously listed the house, and that agent informed her that the sellers knew of only one crack around the air-conditioning system. The Bakers then signed an ‘as is’ sales contract for the property. After the Bakers moved into the house, they discovered severe problems; the house began to crack in several places. The realty company had documents in its possession that indicated that the house had structural problems. This Court held that the Bakers’ signing of *881 an ‘as is’ contract prohibited them from pursuing both their negligence and fraud claims against the realty company. Leatherwood, 619 So.2d at 1274.”
In Teer v. Johnston, 60 So.3d 258 (Ala.2010), the seller knew that the real estate on which her house was located had flooding problems and that it had flooded on a routine basis before she decided to sell it. Despite that knowledge, she represented to the purchasers that there were no flooding problems with the real estate and that it had never flooded. The purchasers then signed an agreement to purchase the real estate that contained an “as is” clause. After the real estate flooded several times, the purchasers sued the seller, claiming that she had committed intentional fraud by representing that the real estate had no flooding problems when she knew otherwise and that she had thereby induced the purchasers to sign the purchase agreement. The seller moved for a summary judgment on the grounds that the purchasers’ claims were barred by the doctrine of caveat emptor and the “as is” clause in the purchase agreement. The trial court granted the seller’s motion, and the purchasers appealed to the supreme court. The purchasers asked the supreme court to overrule the line of cases that includes Moore, Leatherwood, Inc. v. Baker, 619 So.2d 1273, 1274 (Ala.1992); Haygood v. Burl Pounders Realty, Inc., 571 So.2d 1086, 1089 (Ala.1990); and Massey v. Weeks Realty Co., 511 So.2d 171, 173 (Ala. 1987), and reverse the summary judgment in favor of the seller; however, the supreme court refused to overrule that line of cases and affirmed the summary judgment in favor of the seller.
In the present case, the undisputed evidence established that the property was used real estate that was sold in an arm’s-length transaction in which none of the parties to the transaction owed any of the other parties a fiduciary duty. Moreover, there is no evidence indicating that the alleged defect in the lake “ ‘affects health or safety.’” Moore, 849 So.2d at 923 (quoting Fennell Realty Co. v. Martin, 529 So.2d 1003, 1005 (Ala.1988)). Therefore, there is no merit in Jason and Russell’s argument that Clegg, Speaks Land Company, and Buce had a duty to disclose the existence of the alleged defect merely because they knew of its existence and it was not known or readily ascertainable by Jason and Russell. See Moore, 849 So.2d at 923.
Jason and Russell’s direct inquiry regarding the lake did impose a duty on Clegg, Speaks Land Company, and Buce to disclose any defects in the lake that were known to them. Id. There was substantial, though not undisputed, evidence before the trial court tending to prove that a defect in the lake existed and that Clegg, Speaks Land Company, and Buce knew of the existence of that alleged defect when Jason and Russell made their direct inquiry regarding the lake. There was undisputed evidence establishing that, in response to Jason and Russell’s direct inquiry regarding the lake, Speaks and Buce did not disclose the existence of any defect in the lake and affirmatively represented that the lake was low due to the drought and that there was no problem with the lake. However, it is undisputed that subsequent to Jason and Russell’s direct inquiry and Speaks and Buce’s response, Jason signed the contract, which contained an “as is” clause. Moreover, although Russell did not sign the contract and argues that he is not bound by the “as is” clause, he admitted that he and Jason had jointly purchased the property, that they had both signed a promissory note to finance the purchase of the property, and that he had signed the closing statement. In addition, he has asserted a breach-of- *882 contract claim against Clegg, Speaks Land Company, and Buce based on the very contract that he contends is not binding on him for purposes of his misrepresentation and suppression claims. “A party, by Ms actions and acceptance of the benefits of a contract and by operating under such agreement, may ratify and confirm a contract to which his actual signature is not affixed.” Rush v. Atomic Elec. Co., 384 So.2d 1067, 1068 (Ala.1980). Consequently, the “as is” clause in the contract is just as binding on Russell as it is on Jason. “Where a purchaser’s direct inquiry would otherwise impose a duty of truthful disclosure, ... a purchaser’s fraud claim is precluded by language in a sales contract stating that the purchase is ‘as is.’ ” Moore, 849 So.2d at 924. Accordingly, we conclude that the “as is” clause in the contract barred Jason and Russell’s misrepresentation and suppression claims despite the duty of disclosure imposed on Clegg, Speaks Land Company, and Buce by Jason and Russell’s direct inquiry regarding the lake. Therefore, we affirm the summary judgment with respect to the misrepresentation and suppression claims.
II. Negligence Claim
In the trial court, Clegg, Speaks Land Company, and Buce asserted that they were entitled to summary judgments with respect to the negligence claim on three grounds: (1) that the “as is” clause in the contract barred that claim, (2) that Clegg, Speaks Land Company, and Buce did not owe Jason and Russell a duty of care, and (3) that Jason and Russell had assumed the risk. In response, Jason and Russell argued that Clegg, Speaks Land Company, and Buce were not entitled to summary judgments with respect to the negligence claim based on grounds (2) and (3); however, they did not argue that Clegg, Speaks Land Company, and Buce were not entitled to summary judgments with respect to the negligence claim based on ground (1). The trial court did not state its rationale for entering a summary judgment. On appeal, Jason and Russell have argued that the trial court erred if it entered a summary judgment with respect to the negligence claim on the basis of grounds (2) and (3); however, they have not argued that the trial court erred if it entered a summary judgment with respect to the negligence claim on the basis of ground (1). The supreme court has held that an “as is” clause in a contract for the purchase of used real estate bars not only the purchaser’s misrepresentation and suppression claims but also his or her negligence claims. See Leatherwood, 619 So.2d at 1274. Therefore, ground (1) was a valid legal ground for a summary judgment with respect to the negligence claim, which Jason and Russell did not challenge in the trial court and have not challenged on appeal.
“When an appellant confronts an issue below that the appellee contends warrants a judgment in its favor and the trial court’s order does not specify a basis for its ruling, the omission of any argument on appeal as to that issue in the appellant’s principal brief constitutes a waiver with respect to the issue.”
Fogarty v. Southworth, 953 So.2d 1225, 1232 (Ala.2006). Thus, Jason and Russell have waived the issue whether the trial court erred in entering a summary judgment with respect to the negligence claim.[3]
*883 Therefore, we affirm the summary judgment with respect to the negligence claim.

III.Breach-of-Contrad Claim,

Jason and Russell argue that the trial court erred in entering a summary judgment with respect to their breach-of-contract claim because, they say, they contracted with Clegg, Speaks Land Company, and Buce to purchase property that •was free from any material defect and Clegg, Speaks Land Company, and Buce breached the contract by selling them property that had a material defect. However, assuming, without deciding, that Speaks Land Company and Buce could be liable for breach of a contract to which they were not parties, Jason and Russell’s argument has no merit because they did not contract to purchase property that was free from any material defect. They contracted to purchase the property in “as is” condition, and they received the property in “as is” condition. Nonperformance of the contract by the defendant is an essential element of a breach-of-contract claim. Shaffer v. Regions Fin. Corp., 29 So.3d 872, 880 (Ala.2009) (“ ‘The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs’ performance under the contract; (3) the defendant’s nonperformance; and (4) resulting damages.’ ” (emphasis added) (quoting Reynolds Metals Co. v. Hill, 825 So.2d 100, 105 (Ala.2002))). In the present case, Jason and Russell cannot establish that essential element because they received what they contracted for — the property in “as is” condition. Therefore, we affirm the summary judgment with respect to the breach-of-contract claim.

IV.Unjustr-Enriehment Claim

Jason and Russell argue that the trial court erred in entering a summary judgment with respect to the unjust-enrichment claim. However, the only legal authority they have cited in support of that argument are two cases stating the essential elements of a breach-of-contract claim. Obviously, law regarding the essential elements of a breach-of-contract claim is not specifically applicable to the issue whether the trial court erred in entering a summary judgment with respect to the unjust-enrichment claim. Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant’s brief contain “citations to ... cases, statutes, [and] other authorities.” Jason and Russell’s citation of legal authority for a general proposition of law that is not specifically applicable to the issue whether the trial court erred in entering a summary judgment with respect to the unjust-enrichment claim does not constitute sufficient argument for reversal of the summary judgment with respect to that claim. See Cincinnati Ins. Cos. v. Barber Insulation, Inc., 946 So.2d 441, 449 (Ala.2006) (“ ‘[A]n appellant’s citations to general propositions of law not specifically applicable to the issues presented by the appeal do not meet the requirements of Rule 28, Ala. R.App. P.’ ” (quoting Bank-America Hous. Servs. v. Lee, 833 So.2d 609, 621 (Ala.2002))). Accordingly, we decline to consider Jason and Russell’s argument regarding the unjust-enrichment claim, and we affirm the summary judgment with respect to that claim.

V.Bad-Faith Claim

In the trial court, Jason and Russell did not present any argument in oppo *884 sition to the assertion by Clegg, Speaks Land Company, and Buce that they were entitled to a summary judgment with respect to the bad-faith claim. Moreover, they have not argued to this court that the trial court erred in entering a summary judgment with respect to that claim and, therefore, have waived the issue whether the trial court erred in that regard.[4] See Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) (“When an appellant fails to argue an issue in its brief, that issue is waived.”). Therefore, we affirm the summary judgment with respect to the bad-faith claim.
VI. Rule 56(f) Affidavit
Finally, Jason and Russell argue that the trial court erred in ignoring their Rule 56(f) affidavit and entering a summary judgment in favor of Clegg, Speaks Land Company, and Buce without giving them an opportunity to depose Adams, Casey, and Dennis.
“Rule 56(f) allows a party opposing a summary-judgment motion to file an affidavit alerting the trial court that it is presently unable to present ‘facts essential to justify the party’s opposition.’ The Committee Comments to August 1, 1992, Amendment to Rule 56(c) and Rule 56(f) state that ‘[s]uch an affidavit should state with specificity why the opposing evidence is not presently available and should state, as specifically as possible, what future actions are contemplated to discover and present the opposing evidence.’ The disposition of a request made pursuant to Rule 56(f) is discretionary with the trial court.”
Scrushy v. Tucker, 955 So.2d 988, 1007 (Ala.2006) (emphasis added). Moreover, in reviewing a trial court’s failure to grant a continuance based on a Rule 56(f) affidavit,
“‘[s]ome federal cases have, in fact, permitted consideration of whether “ample time and opportunities for discovery have already lapsed.” SEC v. Spence & Green Chem. Co., 612 F.2d 896, 901 (5th Cir.1980); see also Kozikowski v. Toll Bros., Inc., 354 F.3d 16, 26 (1st Cir.2003) (stating that a court may grant a Rule 56(f) continuance if. the party seeking the continuance “demonstrates that it was diligent in pursuing discovery before summary judgment surfaced”); Aviation Specialties, Inc. v. United Technologies Corp., 568 F.2d 1186, 1190 (5th Cir. 1978) (stating that the “[pjlaintiff must bear the consequences of its decision to proceed with discovery piecemeal” and holding that the district court did not abuse its discretion in failing to grant a continuance when the plaintiff had not initiated any discovery until his action had been on file for six months and after a pretrial conference had been conducted).’ ”
Scrushy, 955 So.2d at 1006-07 (quoting McGhee v. Martin, 892 So.2d 398, 405 (Ala.Civ.App.2004)).
In the present case, Jason and Russell’s Rule 56(f) affidavit indicated that they needed to depose Adams, Casey, and Dennis in order to oppose the summary-judgment motions because, they said, Adams could provide testimony regarding “who created the defect in the lake and when it was created” and Casey and Dennis could provide testimony regarding the work they had performed on the lake while Clegg owned the property. We conclude that the trial court did not exceed its discretion in *885 entering a summary judgment in favor of Clegg, Speaks Land Company, and Buce without affording Jason and Russell the opportunity to depose Adams, Casey, and Dennis for the following reasons: (1) the testimony that Jason and Russell expected Adams, Casey, and Dennis to give regarding the subjects specified in the Rule 56(f) affidavit would have been cumulative; (2) the testimony Jason and Russell expected Adams, Casey, and Dennis to give regarding those subjects would not have defeated the summary-judgment motions; and (3) the trial court could properly have concluded that Jason and Russell had had ample time to take the depositions of Adams, Casey, and Dennis before the first summary-judgment motion was filed.
First, the testimony of Adams, Casey, and Dennis would have been cumulative because Clegg admitted that, before Speaks and Buce represented to Jason and Russell that the lake was low due to the drought and that there was no problem with the lake, Clegg knew (1) that the water level in the lake had been fluctuating and that water had been seeping or leaking out of the lake since 2003 at the latest, (2) that Casey had tried to determine why the water level in the lake was fluctuating in 2003, (3) that, in 2003, Casey had moved soil from the side of the dam facing dry land and determined that water was seeping or leaking out of the lake but he did not find an explanation for it and did not know what could be done to stop the water from seeping or leaking, (3) that water continued to seep or leak out of the lake after Casey left in 2003, (4) that members of the Clegg family, with the assistance of Dennis and his daughter, had put 10,000 to 12,000 pounds of bentonite in the lake after Clegg had listed the property for sale, and (5) that water continued to seep or leak out of the lake despite their putting bentonite in the lake. Moreover, Jason had testified in his deposition regarding the substance of the testimony Jason and Russell expected Adams to give regarding the subjects described in the Rule 56(f) affidavit, and, although Jason’s testimony in that regard was hearsay, no motion to strike it was filed and, therefore, it was properly before the trial court for its consideration in ruling on the summary-judgment motions, and we have considered it in reviewing the summary judgment. See Ex parte Secretary of Veterans Affairs, 92 So.3d 771, 782-83 (Ala.2012).
Second, the testimony Jason and Russell expected Adams, Casey, and Dennis to give regarding the subjects specified in the Rule 56(f) affidavit would not have defeated the summary-judgment motions because that testimony could not have created a genuine issue regarding the dis-positive facts in the case, which were (1) that the property was used real estate and (2) that the contract contained an “as is” clause.
Third, the action was filed on August 9, 2009, and the first summary-judgment motion was not filed until March 14, 2011, 18 months later. Jason and Russell’s deposition testimony indicates that they had talked to Adams, Casey, and Dennis and were well aware of those potential witnesses’s knowledge regarding the subjects described in the Rule 56(f) affidavit before Jason and Russell filed the action. Jason and Russell’s Rule 56(f) affidavit did not explain why they had not taken the depositions of Adams, Casey, and Dennis during the 18-month period between the filing of the action and the filing of the first summary-judgment motion. Thus, the trial court could have concluded that “ ‘ “ample time and opportunities for discovery ha[d] already lapsed” ’ ” by the time the first summary-judgment motion was filed. Scrushy, 955 So.2d at 1006-07 (quoting McGhee, 892 So.2d at 405, quoting in turn *886 SEC v. Spence & Green Chem. Co., 612 F.2d 896, 901 (5th Cir.1980)).

Conclusion

For the reasons discussed above, we affirm the summary judgment in favor of Clegg, Speaks Land Company, and Buce.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. Bentonite is a land of clay that is absorbent.

. The Bentons also sued Clegg Capital, Inc., and Matthew R. Clegg; however, the trial court dismissed the claims against them on July 19, 2010, and Russell and Jason have not appealed the dismissal of those claims.

. Even if Jason and Russell had challenged Me summary judgment with respect to the negligence claim on the basis of ground (1) on appeal, we could not have considered that challenge because they did not argue to the trial court that Clegg, Speaks Land Company, and Buce were not entitled to a summary judgment with respect to the negligence claim based on ground (1). See Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000) ("[T]he appellate *883 court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment.”(emphasis omitted)).

. Even if Jason and Russell had challenged the summary judgment with respect to the bad-faith claim on appeal, we could not have considered that challenge because they did not argue to the trial court that Clegg, Speaks Land Company, and Buce were not entitled to a summary judgment with respect to that claim. See Ryals, supra.