PER CURIAM.
Franklyn Jenkins appeals from a judgment of the Houston Circuit Court (“the trial court”) granting a summary-judgment motion filed by American Transport, Inc. (“ATI”), in Jenkins’s action seeking benefits under the Alabama Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975. We reverse and remand.
*999 In April 2011, Jenkins, a professional truck driver, sued ATI, seeking benefits under the Act for injuries he had sustained in Minnesota in February 2010 when he unchained a load of cargo he had transported there from Colorado for ATI (“the accident”)- In November 2013, the trial court ordered the parties to ñle a joint status report regarding the action, which the parties filed in December 2013. In their joint status report, the parties asked the trial court to establish March 14, 2014, as the deadline for filing dispositive motions. On March 14, 2014, ATI filed a summary-judgment motion, asserting that it was entitled to a judgment as a matter of law because, ATI said, (1) the Act did not afford Jenkins benefits for the accident because, ATI said, the accident occurred outside Alabama, Jenkins’s work was not localized in Alabama or any other state, and Jenkins’s contract of hire with ATI, if any, was not made in Alabama; and (2) Jenkins was an independent contractor rather than an employee of ATI. Also on March 14, 2014, Jenkins filed a motion for a partial summary judgment, asserting that he was entitled to a judgment as a matter of law with respect to the issue whether he was an employee of ATI.
On March 17, 2014, the trial court set the parties’ motions for a hearing on May 6,2014. On the day'of the hearing regarding the parties’ summary-judgment motions, Jenkins’s counsel filed a Rule 56(f), Ala. R. Civ. P., affidavit asserting that he needed additional time to conduct discovery in order to oppose ATI’s summary-judgment motion and seeking a continuance of the hearing; however, the trial court did not continue the hearing.
In June 2014, the trial court entered a judgment denying Jenkins’s motion for a partial summary judgment and granting ATI’s summary-judgment motion. The judgment did not explain the trial court’s rationale for its rulings. Thereafter, Jenkins timely appealed' to our supreme court, which subsequently transferred the. appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
, In. reviewing a summary judgment in an action seeking benefits under the Act, we apply the standard of review applicable to the review of summary judgments generally., See, e.g., Sartin v. Madden, 955 So.2d 1024, 1026-27 (Ala.Civ.App.2006).
“[An appellate court’s] review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003), We apply the same standard' of review as the trial court applied. Specifically, we must de■.termine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review, the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact; Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. ‘[Substantial, evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer 'the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989),”
*1000 Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
Jenkins first argues (1) that he was entitled to a continuance of the May 6, 2014, hearing pursuant to Rule 56(f) based on his counsel’s assertion in his affidavit that he needed to conduct additional discovery in order to oppose ATI’s summary-judgment motion and (2) that the trial court committed reversible error by failing to grant him such a continuance. In Benton v. Clegg Land Co., 99 So.3d 872, 884 (Ala.Civ.App.2012), this court stated:
“ ‘Rule 56(f) allows a party opposing a summary-judgment motion to file an affidavit alerting the trial court that it is presently unable to present “facts essential to justify the party’s opposition.” ... The disposition of a request made pursuant to Rule 56(f) is discretionary with the trial court.’
“Scrushy v. Tucker, 955 So.2d 988, 1007 (Ala.2006) (emphasis added). Moreover, in reviewing a trial court’s failure to grant a continuance based on a Rule 56(f) affidavit,
“1 “[s]ome federal cases have, in fact, permitted consideration of whether ‘ample time and opportunities for discovery have already lapsed.’ SEC v. Spence & Green Chem. Co., 612 F.2d 896, 901 (5th Cir.1980); see also Kozikowski v. Toll Bros., Inc., 354 F.3d 16, 26 (1st Cir.2003) (stating that a court may grant a Rule 56(f) continuance if the party seeking the continuance ‘demonstrates that it was diligent in pursuing discovery before summary judgment surfaced’); Aviation Specialties, Inc. v. United Technologies Corp., 568 F.2d 1186, 1190 (5th Cir.1978) (stating that the ‘[pjlaintiff must bear the consequences of its decision to proceed with discovery piecemeal’ and holding that the district court did not abuse its discretion in failing to grant a continuance when the plaintiff had not initiated any discovery until his action had been on file for six months and after a pretrial conference had been conducted).” ’
“Scrushy, 955 So.2d at 1006-07 (quoting McGhee v. Martin, 892 So.2d 398, 405 (Ala.Civ.App.2004)).”
In the present ease, Jenkins’s action had been pending for three years when his counsel filed his request for additional discovery on May 6, 2014, the day set for the hearing on the parties’ summary-judgment motions. Moreover, Jenkins had requested in the joint status report filed in December 2013 that the trial court establish March 14, 2014, as the deadline for the parties to file dispositive motions. Given those circumstances, the trial court reasonably could have concluded that “ ‘ “ ‘ample time and opportunities for discovery ha[d] already lapsed’ ” ’ ” by March 14, 2014, when the parties filed their dispositive motions. Benton, 99 So.3d at 884 (quoting Scrushy v. Tucker, 955 So.2d 988, 1006-07 (Ala.2006), quoting in turn McGhee v. Martin, 892 So.2d 398, 405 (Ala.Civ.App.2004), quoting in turn SEC v. Spence & Green Chem. Co., 612 F.2d 896, 901 (5th Cir.1980)). Consequently, we cannot hold that the trial court improperly exercised its discretion by refusing to continue the May 6, 2014, hearing, and, therefore, we reject Jenkins’s first argument.
Jenkins also argues that the trial court erred in granting ATI’s summary-judgment motion if it based that ruling on ATI’s assertion that Jenkins was an independent contractor because, Jenkins says, the evidence established that he was an employee rather than an independent contractor.
“It is well established law that, in the context of a workers’ compensation case, when determining whether an employer- *1001 employee relationship exists, the courts will look to whether the purported employer has reserved the right to control the manner in which the worker performs the duties of the work. Atchison v. Boone Newspapers, Inc., 981 So.2d 427, 431 (Ala.Civ.App.2007).
“1 “ ‘[F]or one to be an employee, the other party must retain the right to direct the manner in which the business shall be done, as well as the result to be accomplished or, in other words, not only what shall be done, but how it shall be done.’ ”
‘“White v. Henshaw, 363 So.2d 986, 988 (Ala.Civ.App.1978) (quoting Weeks v. C.L. Dickert Lumber Co., 270 Ala. 713, 714, 121 So.2d 894, 895 (1960)). In determining “whether [an individual] is an independent contractor or whether an employer-employee relationship exists, the eourt looks to the reserved right of control rather than the actual exercise of control.” Turnipseed v. McCafferty, 521 So.2d 31, 32 (Ala.Civ.App.1987). If the right of control extends no further than directing what is to be ultimately accomplished, an employer-employee relationship is not established; however, “if an individual retains the right to direct the manner in which the task is to be done or if that individual does in fact dictate the manner of operation, then an employer-employee relationship is established.” Id. at 33. The factors to be considered in determining whether an individual or an entity has retained the right of control include: (1) direct evidence demonstrating a right or an exercise of control; (2) the method of payment for services; (3) whether equipment is furnished; and (4) whether the1 other party has the right to terminate the employment, See Ex parte Curry, 607 So.2d 230 (Ala.1992).’
“Atchison v. Boone Newspapers, Inc., 981 So.2d at 431-32. ‘Furthermore, ‘ “[t]he retention of control necessary to •establish employee status is determined on a- case-by-case basis.” Luallen v. Noojin, 545 So.2d 775, 776 (Ala.Civ.App.1989).’ Sartin v. Madden, 955 So.2d 1024, 1027 (Ala.Civ.App.2006).”
Susan Schein Chrysler Dodge, Inc. v. Rushing, 77 So.3d 1203, 1208 (Ala.Civ.App.2011). The designation of an individual as an independent contractor in a contract is not necessarily controlling with respect to the issue whether that individual is an independent contractor. See Atchison v. Boone Newspapers, Inc., 981 So.2d 427, 432 (Ala.Civ.App.2007) (“[T]he designation of Atchison as an independent contractor in the contracts is not necessarily controlling.”).
As noted above, in reviewing the trial court’s judgment, we must view the evidence in the light most favorable to Jenkins, the nonmovant. See Dow, 897 So.2d at 1038. Viewed in that manner, the record reveals the following. Jenkins and ATI entered into a written agreement (“the agreement”) titled “Service Agreement between [ATI] and [Jenkins]” on December 28, 2009, in Dothan. In the agreement, which referred to Jenkins as “Lessor” and referred to ATI as “Lessee,” Jenkins, who owned a truck tractor (“the tractor”), 'agreed to lease the tractor to ATI for use in its motor-carrier business and to provide a driver for the tractor. In practice, Jenkins himself drove the tractor for ATI, which made him an owner-operator.[1]
*1002 Section 3 of the agreement provided that either -party could terminate the agreement by giving the other party 30 days’ written notice and that ATI could terminate the agreement without giving Jenkins prior notice if Jenkins violated the. service standards established by- a shipper, violated any federal or state laws or regulations, violated any of ATI’s policies, violated any of the terms and conditions of the- agreement, or transported any cargo using the tractor that ATI had'-not specifically authorized him to transport, Moreover, ATI’s policy manual prohibited Jenkins from using the tractor to transport cargo •for anyone other than ATI or corporations having-the same corporate parent as ATI.
Section 4 of the agreement provided that ATI would compensate Jenkins by paying him a percentage of the gross revenue ATI received as a result of a load of cargo being transported by the tractor less any moneys advanced by ATI, Section 4 further provided that Jenkins would “look solely to [ATI] for payment of [his] compensation.”
Section 6 of the agreement provided that ATI would pay Jenkins his compensation within 15 days after he submitted certain specified documents proving that he had transported a load of cargo for ATI in a manner that was acceptable to the shipper and the consignee. Section 7 of the agreement provided that Jenkins was responsible for paying all. the expenses of operating the tractor, including, but not limited to, the expenses incurred in maintaining and repairing the tractor and the expenses incurred for fuel, lubricants, and tires.
Section 11 of the agreement provided that Jenkins was responsible for providing his own workers’ compensation insurance, although, under certain circumstánces, he could obtain coverage under ATI’s workers’ compensation insurance at his own expense. ' Section 18 of the agreement provided:
*1003 “18. [Jenkins] IS INDEPENDENT CONTRACTOR AND NOT EMPLOYEE. The parties mutually agree that [Jenkins] is an independent contractor. During the terms of this contract,- neither [Jenkins], [his] driver, helpers nor any other pérsonnel shall for any purpose or under any circumstance be considered to be an employee of [ATI],
“[Jenkins] assumes full and complete responsibility for all employees employed by [him] and the performance of all duties and obligations under this Agreement. It is agreed by the parties that [Jenkins] shall have the right to accept or reject any loads offered to [him] by [ATI]. If [Jenkins] accepts a load [he] shall control and be responsible for the performance of the services, the routes to be used by the [tractor], the purchase of fuel, the selection of rest and meal stops, the hiring, supervising, disciplining, and discharging of drivers, helpers and other -personnel, the hours worked by Jenkins, and [his] employees, holidays and vacation periods, and similar matters related to [his] performance under [the agreement]. [Jenkins] shall also be responsible for maintaining and repairing the [tractor] at such intervals and. locations as [he] may choose. [ATI] has no right to and will not control or attempt to control the manner or means by which [Jenkins] performs the services contemplated by this Agreement.
“Neither [Jenkins] nor [his] drivers, helpers or any other personnel shall for any purpose or under any circumstances be considered to. be an employee of [ATI]....
“During the term of this Agreement, and only to the extent required by federal and/or state laws' and regulations, [ATI] shall have exclusive possession, control and use of the [tractor] and shall assume complete responsibility for-the operation of the [tractor].
“[Jenkins] assumes full and complete responsibility for all drivers, helpers and other personnel engaged by [him] to assist in. the performance of [his] duties and obligations under this Agreement. [ATI] shall, offer loads to [Jenkins] and establish such time schedules for pickup and delivery as are necessary to enable [ATI] to meet the service requirements of its customers. [Jenkins] shall have the right to accept or reject any loads offered to [him]. If [Jenkins] accepts a load [he] shall control-and be responsible for the performance of the services, the routes to be used by the tractor, the purchase of fuel, the selection of rest and meal stops, the. hiring, supervising, disciplining and discharging of drivers, helpers and other personnel, the hours worked by [Jenkins] and [his] employees, holidays and vacation periods, and similar matters related to [his] performance of service under this Agreement. [Jenkins] shall also be responsible for maintaining and repairing the [tractor] at such intervals and locations as [he] may choose.. [ATI] has no right and will not control or attempt to control the manner or means by which [Jenkins] performs’the service contracted for in this Agreement.”
(Capitalization in original.)
David Hartman, ATI’s designated representative for Rule 30(b)(6), Ala. R. Civ. P., purposes, testified that, based on the fact that the license plate on the tractor was' an Illinois plate and based on the number sequence on that license plate, ATI “probably” “assisted” Jenkins in obtaining the license plate on the tractor. When asked why the plate would be an Illinois plate, Hartman testified: “Illinois is an easy state to work with in terms of speed, in terms of ease of re-issuing a plate if we don’t get one back after an independent *1004 contractor separates from us.” (Emphasis added.)
Hartman also testified as follows: •
“Q. [By Jenkins’s counsel:] It’s my understanding that Mr. Jenkins came to ATI with his own tractor, but he did not have a trailer. Is that your understanding as well?
“A. That’s correct.
“Q. So ATI assisted him in getting a trailer?
“A. Yes. We facilitated getting a trailer for him.
“Q. Tell me how that process works.
“A. We have a contract with trailer rental and leasing companies, including Extra Lease. Most of them will not lease or rent equipment to an independent contractor, because they don’t have insurance on their own, typically, and they may not have the financial wherewithal to satisfy the rental company’s requirements. So we have a contract with the leasing companies or the rental companies. We can obtain a trailer from them and re-rent it to our independent contractor.
“Q. And that’s what you did here?
“A. Yes.”.
Hartman testified that ATI instructed its drivers not to load or unload cargo. Moreover, Jenkins testified that ATI had instructed him not to allow anyone other than the individuals authorized to load and unload the cargo to touch the cargo while it was on the trailer attached to his tractor (“the trailer”). He further testified that ATI would hold him financially responsible for any damage to the cargo that occurred after it was loaded and before it was unloaded. Jenkins testified that, after a load of cargo had been loaded on the trailer, he was responsible for strapping or chaining the cargo to the trailer.
The load of cargo on the trailer when Jenkins reached his destination on the day of the accident included several heavy, wheeled carts made of steel. When the shipper’s agents had loaded the carts, Jenkins had asked the shipper’s agents to remove the wheels from the carts to ensure that the carts did not roll while he was transporting them; however, the shipper’s agents told Jenkins that they always left the wheels on the carts after they were loaded on trailers and that the carts could be safely transported with the wheels on them. The shipper’s agents told Jenkins to use straps rather than chains to secure the load to the trailer, and he did so.
After Jenkins had traveled approximately 10 miles from the location in Colorado where the shipper’s agents had loaded the cargo, he felt the load shift forward on the trailer. He stopped and called his dispatcher but was unable to reach the dispatcher and left a message. He then called the shipping broker, who was the middle man between the shipper and ATI, to report that the load had shifted. The broker told Jenkins to stay where he had stopped and that he would call the shipper’s agents to see if they would come to Jenkins’s location and stabilize the load; however, the broker later reported to Jenkins that the shipper’s agents had refused to try to stabilize the load. Jenkins testified that he then used chains to strap the load down tighter to keep it from shifting on the trailer and resumed driving to his destination in Minnesota. Thereafter, the load shifted a second time. Jenkins stopped and called his dispatcher. The dispatcher told him that he had the option of arranging for a tow truck to help him stabilize the load, but Jenkins elected not to call for a tow truck because ATI would hold him financially responsible for any damage that the cargo might sustain while it was being stabilized. Instead, he added more chain restraints to stabilize the cargo *1005 and then continued to his destination. He arrived at his destination without any further shifting of the cargo. When the consignee’s agents were ready to unload the cargo, Jenkins unchained one of the steel carts so that it could be unloaded. When he did so, the cart rolled off of the trailer, hitting Jenkins and pinning him between it and a nearby vehicle. Jenkins sustained critical injuries to his head, torso, and legs.
We will now analyze the evidence as it relates to the four factors to be used in determining whether an individual is an employee or an independent contractor (“the four factors”). With respect to the first factor, i.e., direct evidence demonstrating a right or an exercise of control, the record contains evidence establishing that ATI prohibited Jenkins from loading and unloading cargo and prohibited him from allowing anyone other than the individuals authorized to load and unload the cargo from touching the cargo while it was on the trailer. Moreover, the agreement provided that ATI could terminate the agreement without notice if Jenkins violated those prohibitions. A fact-finder could reasonably infer from that evidence that ATI exercised control over some aspects of the manner in which Jenkins performed his tasks. Moreover, a fact-finder could reasonably infer from Jenkins’s testimony that those prohibitions imposed by ATI affected Jenkins’s decisions and actions in response to the shifting of the cargo while he was en route from Colorado to Minnesota and could reasonably infer that, if Jenkins had believed that he was free to arrange for a third party to reload or stabilize the load using a crane or .forklift, the accident might not have occurred. Accordingly, we conclude that the recordnon-tains substantial direct evidence indicating that ATI exercised a right to control some aspects of the manner in which Jenkins performed his tasks and, therefore, contains substantial direct evidence tending to prove that Jenkins was an employee rather than an independent contractor.
With respect to the second of the four factors, i.e., the method of payment for services, the evidence indicates that Jenkins was paid a percentage of the gross revenue generated by his transporting cargo for ATI instead of a salary or pay by the hour or by the mile; however, in Ex parte Curry, 607 So.2d 230 (Ala.1992), our supreme court held that “no reasonable view of the evidence supported] [a] trial court’s judgment [concluding that a truck driver was an independent contractor rather than an employee],” 607 So.2d at 233, despite the fact that the truck driver in that case was paid a percentage of the gross revenues generated by his transporting cargo for the trucking company. Therefore, we conclude that the manner in which Jenkins was paid is not conclusive regarding the issue whether he was an employee or an independent contractor.
With respect to the third of the four factors, i.e., whether equipment is furnished, the evidence indicates that Jenkins furnished the tractor; however, a fact-finder could reasonably infer from Hartman’s testimony indicating that owner-operators were required to return their license plates when their contracts terminated, that the license plates belonged to ATI rather than the owner-operators and, thus, that ATI furnished the license plates to its owner-operators. Likewise, a fact-finder could reasonably infer from Hartman’s testimony indicating that ATI leased trailers, which it “released” to its owner-operators, that ATI furnished the trailers to its owner-operators, although it charged them for doing so. Accordingly, we conclude that the record contains substantial evidence tending to prove that ATI provided some of the equipment Jenkins used in performing his tasks.
*1006 Finally, with -respect to-the last of the four factors, i.e., whether the other party has the right to terminate the employment, the evidence indicates that Jenkins had the right to terminate the agreement upon 30 days’ notice. Similarly, in Curry, supra, “the lease agreement [between the truck driver and the trucking company] provided that the lease agreement ‘shall terminate upon 30 [days’] written notice.’ ” 607 So.2d at 233. As noted above, our supreme court held in Curry that no reasonable view of the evidence in that case supported the lower court’s judgment concluding that a truck driver was an independent contractor rather than an employee. 607 So.2d at 233. Therefore, we conclude that the evidence in the present case as it relates to the fourth of the four factors tends to prove that Jenkins was an employee rather than an independent contractor.
The record also contains substantial evidence relating to some.of the four factors that would support the conclusion that Jenkins was an independent contractor rather than an employee; however, the substantial evidence tending to prove that Jenkins was an employee discussed above establishes the existence of a genuine issue of material fact regarding whether he was an employee or an independent contractor. Therefore, if the trial court granted ATI’s summary-judgment motion based on its argument that Jenkins was an independent contractor, it erred in doing so. See Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784, 787 (Ala.1981) (extended opinion on rehearing) (“[S]ummary judgment may be granted only when the materials on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”).
Jenkins also argues that the trial court erred if it granted ATI’s summary-judgment motion based on the other ground asserted by ATI, i.e., ATI’s assertion that the Act' did not afford Jenkins benefits for the accident' because, ATI said, the accident occurred outside Alabama, Jenkins’s work was not localized in Alabama or any other state, and Jenkins’s contract of hire with ATI, if any, was not made in Alabama. Specifically, Jenkins argues that, despite the fact that the accident occurred in Minnesota, he is entitled to benefits under the Act pursuant to either subsection (2) or subsection (3) of § 25 — 5—35(d), Ala.Code 1975. In pertinent part, 25-5-35(d) provides:
“If an employee, while working outside of this state, suffers an injury on account of which he or, in the event of his death, his dependents, would have been entitled to the benefits provided by [Article 2] and Article 3 of this chapter [i.e., the Act] had such injury occurred within this state, such employee or, in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by [Article 2] and Article 3 of this chapter, provided that at the time of such injury:
[[Image here]]
“(2) He was working under a contract of hire made in this state in employment, not principally localized in any state;
“(3) He was working under a contract of hire made in this state in employment principally localized in another state whose workers’ compensation law was not applicable to his employer.... ”
■ The undisputed evidence indicated that, while Jenkins was hauling loads for ATI, he- picked up loads in various different states without any one state being the principal pick-up state and that he delivered loads to various different states without any one state being the principal deliv *1007 ery state. Thus, the undisputed evidence establishes that Jenkins’s work was not principally localized in any state. Therefore, Jenkins cannot establish a right to benefits under the Act for the accident pursuant to subsection (3) of § 25 — 5—35(d); however, if he was an employee of ATI rather than an independent contractor and if his contract of hire was made in Alabama, he would be entitled to benefits under the Act for the accident pursuant to subsection (2) of § 25-5-35(d) because his work was-not principally localized in any state.
It is undisputed that Jenkins signed the agreement in Alabama. Jenkins’s execution of that agreement in Alabama constitutes substantial evidence tending to prove that he made a contract of hire with ATI in Alabama.- Therefore, Jenkins’s execution of the agreement in Alabama, at the very least, establishes the existence of a genuine issue of material fact regarding whether Jenkins made a contract of hire with ATI in Alabama. Therefore, the trial court erred if it granted ATI’s summary-judgment motion on the basis of ATI’s argument that Jenkins was not entitled to benefits under the Act for the accident pursuant to § 25-5-35(d). See Ryan, supra.
Because the trial court erred in granting ATI’s summary-judgment motion regardless of which ground it relied upon in doing so, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., and DONALDSON, J., concur in the result, without writings.

. The agreement stated that ATI is "a motor carrier certificated by the Federal Highway Administration ... and various state regulatory agencies....” We note that § 25-5-1(4), Ala.Code 1975, provides, in pertinent part: "Notwithstanding the provisions of this chap *1002 ter [i.e., the Act], in no event shall a common carrier by motor vehicle operating pursuant to a certificate of public convenience and necessity be deemed the 'employer' of a leased-operator or owner-operator of a motor vehicle or vehicles under contract to the common carrier,” (Emphasis added.) We further note that, in Alaplex Transportation, Inc. v. Rossen, 836 So.2d 901, 907 (Ala.Civ.App.2002), this court held that the legislature had "unequivocably foreclosed consideration of other factors [to determine whether a common carrier was the employer of an owner-operator or leased-operator] by stating in § 25-5-1(4) that in no event shall a common carrier be deemed the ‘employer’ of an owner-operator or a leased operator,” It appears that ATI might have been able to assert the exemption from the Act for common carriers as to owner-operators in the present case; however, it did not do so. Although an appellate court can generally affirm a trial court’s judgment on any valid legal ground presented by the record, that rule is subject to at least two exceptions, one of which is that an appellate court cannot affirm a judgment on .the basis of an unpleaded affirmative defense that would otherwise serve as a basis for affir-mance if it -had been pleaded. See Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003). The exemption for common carriers with respect to owner-operators is an affirmative defense because it is "a defense that raises a new matter and that would be a defense even if the relevant allegations in the plaintiff's complaint were true,” Patterson v. Liberty Nat'l Life Ins. Co., 903 So.2d 769, 779 (Ala.2004), as to which ATI- would bear the burden of proof, see Mobile Liners, Inc. v. McConnell, 220 Ala. 562, 566, 126 So. 626, 629 (1930) ("[T]he burden is upon the employer to bring itself within the terms of [an] exception or proviso [to the coverage of the Act].”), Therefore, because ATI did not plead the exemption for common carriers with respect to owner-operators contained in § 25-5-1(4) as an affirmative defense, we cannot consider that exemption as a ground for affir-mance of the trial court's judgment. See Liberty Nat'l Life Ins. Co., supra.